## GULF REFINING CO. v. LOEB.

### No. 17217.

Court of Appeal of Louisiana. Orleans.
May 6, 1940.

Rehearing Denied May 20, 1940.
Writ of Certiorari Denied July 18, 1940.

Norman R. Tilden and Brittmar P. Landry, both of New Orleans, for appellant.

Stanley E. Loeb, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit on three promissory notes made by Robert E. Loeb to the order of Gulf Refining Company. One is for $100 and is due June 15, 1938, one for $100 due July 15, 1938, and one for $45.76 due August 15, 1938. Each bears interest at the rate of 6 per cent. per annum from maturity and stipulates for the payment of 10 per cent. attorney's fees on the total amount of principal and interest in the event of the necessity for the employment of counsel for collection.

It is alleged that, though all notes are past due, no payment has been made on any of them, and judgment is sought for the full amount of each and for the interest and attorneys' fees stipulated for.

Defendant interposed the special defense that the notes sued on are void and unenforcible "for the reason that no consideration passed from plaintiff to defendant, or any other person, to support the execution and delivery of the said notes".

Assuming the position of plaintiff in reconvention, Loeb alleged that, at the time of the execution of the said notes, he had paid to plaintiff the sum of $100 "in error", and he prayed for judgment for the return of the said $100.

There was judgment sustaining this defense and dismissing the suit of plaintiff, and in favor of plaintiff in reconvention as prayed for. From this judgment plaintiff has appealed.

The record shows that defendant, Loeb, was vice-president of, though not a stockholder in, a corporation known as Waverly, Inc., located at Thibodaux, Louisiana, and that that corporation, in its operations in the manufacture of sugar, from time to time required supplies of fuel oil, which it had frequently purchased from plaintiff, Gulf Refining Company. Prior to December, 1937, Waverly, Inc., having no line of credit with the Gulf Refining Company, had established a system of maintaining with that corporation a deposit of $500 —referred to in the record as a "cushion" —so that, should the said Waverly, Inc., fail to pay for any oil delivered to it, the refining company might, from that deposit or "cushion", deduct the amount due. At some time prior to December 16, 1937, because of purchases made and not paid for, Waverly, Inc., had not only exhausted the deposit, but had also incurred an additional liability to the extent of $64.26. On December 16, 1937, additional oil was required, but the refining company refused to make delivery unless payment should be made, or the deposit or "cushion" renewed. The price of the additional oil required was $281.50. Thereupon defendant, Loeb, by telephone, called the credit manager of the refining company and, as a result of that

conversation, Loeb gave to the refining company a document referred to by plaintiff as a check and by defendant as a draft and reading as follows:

"The Hibernia National Bank
"In New Orleans
"New Orleans, La., December 16, 1937
"Pay to the order of Gulf Refining Company $564.26 Five Hundred Sixty Four and 26/100 Dollars
"Value received and charge to account of
"Waverly, Incorporated
"(Signed) Robert E. Loeb
"Robert E. Loeb, Vice-Pres.
"To Lafourche National Bank
"Thibodaux, Louisiana."

This amount was intended to include the balance of $64.26 which was already due and a new deposit or "cushion" of $500.

When this so-called "draft" was presented to the drawee bank, it was not honored, and, as a result, the amount due to the refining company became $345.76. Thereafter Waverly, Inc., filed a petition in bankruptcy.

There was a controversy concerning the question of whether Loeb was personally liable and, as a result of a conference at which both he and his attorney were present, he paid to the Gulf Refining Company $100 by check and gave for the balance his personal notes, which are now sued on.

It is Loeb's contention that, when he gave to the refining company the draft, or check, for $564.26, he did not incur any personal obligation and that, therefore, when, later, that draft was not honored, and when, still later, he paid $100 in cash and gave his note for the balance, he received no consideration therefor, since the oil had already been delivered to Waverly, Inc., on the faith of the draft which he had executed—not individually, but as an authorized officer of Waverly, Inc. It appears that Loeb was not authorized individually to draw checks on the bank account of Waverly, Inc., in the Lafourche National Bank at Thibodaux and that that bank had been instructed to honor checks of the corporation only when signed by two officers.

■ It is contended now by Loeb that when he executed the notes, not only did he receive no consideration therefor, but that he did so under duress and threats of criminal prosecution. But when evidence was tendered to support this contention that there were threats of criminal prosecution, that evidence was objected to on the ground that the pleadings contained no reference to any such threats. This objection was, we think, properly sustained. The allegation that defendant acted "in error" is obviously inconsistent with the charge that he acted under coercion and threats of criminal prosecution.

■ Had Loeb not executed the notes in question and had he not paid the $100 which he did pay, there might have been no liability in him as a result of the original transaction, for, though it is true that the credit manager of the Gulf Refining Company testified that when he agreed to accept the said document executed by Loeb, Loeb "assured" him that it would be paid, still it cannot be said that such a verbal assurance made Loeb liable as surety. It is well settled in this state that one is not liable as surety unless his obligation is assumed in a writing which, in express terms, sets forth the said obligation.

These questions are discussed most interestingly and completely in Tulane Law Review, Vol. XIII, page 519, in an article entitled "The Nature and Essentials of Conventional Suretyship". In that article it is shown that, because of Article 2278 of our Civil Code, a contract of suretyship must be in writing, and it is also shown that "Because of the dangerous nature of the surety's position, both the civil and the common law provide that suretyship can never be presumed and must always be expressed". We also find that the requirement that the contract of suretyship must be expressed has been discussed in many Louisiana cases, with the ultimate result that it is now held that there must be more than the suggestion that the principal obligor is financially sound.

■ For instance, in Exchange National Bank v. Waldron Lumber Company et al., 177 La. 1015, 150 So. 3, 4, it was held that the statement "we are behind Mr. Waldron and financing him" is not an express assumption of the obligation of suretyship. Therefore, we conclude that, had Loeb not executed the notes which are now sued on and had he not made the payment for the return of which the reconventional demand is filed, there might have been no liability in him as surety, unless upon the theory that he had committed a tort in executing the check with only one signature. But, when Waverly, Inc., went

into bankruptcy and demand was made upon Loeb, there obviously was in his mind some doubt as to whether or not he might not have been liable by reason of the fact that he was not authorized, without the signature of some other officer, to draw against the account of the company in the Lafourche National Bank, and, since there was some doubt in his mind on this question, there was no doubt the feeling that, possibly, he might be held liable not secondarily as surety for Waverly, Inc., but primarily as a result of his action in giving to the Gulf Refining Company a draft or check which he was not authorized to sign. And let us say here that we see no difference between a check drawn on the bank in which the drawer corporation has an account and a draft drawn on the bank in which the drawer may have an account.

◼ When demand was made upon Loeb on the theory that he had made himself personally liable by obtaining the oil upon presentation of an unauthorized check, or upon his verbal assurance that payment would be made, he called upon his counsel and discussed the matter and then made the payment which he did make and executed the notes which are now sued on. He thus, in writing, agreed to pay the debt of Waverly, Inc., though there may not have been any liability in him had he not executed the notes.

Furthermore, since there was some slight possibility that he might be legally liable as a result of the issuance of the unauthorized check and as a result of his assurance, there was the possibility that the refining company might demand from him immediate payment and might file suit against him for that payment. Being unable to pay in cash and desiring time, it is obvious that he suggested to the refining company that, if that extension of time could be accorded him, he would make payment. We think that that extension formed the consideration for the issuance of the notes, so that, in either event, whether he assumed in writing the obligation to pay the debt of another and obtained an extension of time to pay, or whether he himself compromised his own possible liability by seeking and obtaining an extension of time, is unimportant. In any event, there was sufficient consideration for the issuance of the notes.

In 10 C.J.S., Bills and Notes, § 151, subd. g, (1), p. 618, it is said: "The waiver or release of a legal right, or a forbear-

ance to exercise the same, is sufficient consideration to support an undertaking on a bill or note made on account of it; and there may be forbearance as to some parties and release as to others. This is true although the right or interest involved is contingent and uncertain; or of doubtful or little value."

In the same volume, § 151, subd. g, (5), p. 623, appears the following:

"The compromise or settlement of a doubtful or disputed claim may furnish a sufficient consideration to support an undertaking on a bill or note, provided the obligor had knowledge of the facts, and the settlement was entered into in good faith and without fraud.

"If there was a bona fide doubt or dispute, the compromise or settlement may furnish a sufficient consideration irrespective of what the actual legal rights of the parties might have been. It is immaterial that the claim ultimately proves to be bad or without merit, that claimant could not have recovered as much by suit, that the claim was founded on a moral rather than a legal obligation, * * *".

To the same effect, see 7 American Jurisprudence, "Bills and Notes", section 245, page 939, from which we quote the following: "Compromise, settlement or release of a disputed claim is consideration for a promise on a bill or note, provided the compromise or settlement is not the consequence of duress and that the claim is not entirely without basis or reason for belief in its existence nor the claimant without good faith or belief therein, irrespective of its actual legal basis or worth, of the intention of the claimant to resort to legal action to enforce it, and of the belief of the promisor in its validity, for he may prefer settlement rather than litigation, and receiving that benefit, he will be held bound thereby."

It is unimportant that there was included in the amount for which Loeb made himself liable $64.26 as the balance of the purchase price of oil which had been delivered before these negotiations were entered into. If Loeb, in obtaining an extension of time within which to settle his possible liability, voluntarily agreed to include this additional amount, the fact that he did obtain the extension would be sufficient consideration for the entire transaction.

It is therefore ordered, adjudged and decreed that the judgment appealed from

be and it is annulled, avoided and reversed, and that there now be judgment in favor of plaintiff and against defendant in the sum of $245.76, with interest at 6 per cent. on $100 from June 15, 1938, until paid, with interest at 6 per cent. on $100 from July 15, 1938, until paid, and with interest at 6 per cent. on $45.76 from August 15, 1938, until paid, and with attorney's fees at 10 per cent. on the entire amount.

It is further ordered, adjudged and decreed that the judgment in favor of plaintiff in reconvention be and it is annulled, avoided and reversed and that the reconventional demand be and it is dismissed.

All at the cost of defendant and intervenor.

Reversed.

WESTERFIELD, Justice.
I respectfully dissent.