169 So.2d 178 (1964)
STAR SALES COMPANY, Inc.
v.
James L. ARNOULT.
No. 1568.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1964.
Thomas L. Hollis, New Orleans, for plaintiff-appellant.
Thomas A. Rayer, New Orleans, for defendant-appellee.
Before McBRIDE, YARRUT and BARNETTE, JJ.
CHRIS T. BARNETTE, Judge pro tem.
This is a suit for $1,239.81 on an open account for merchandise sold by plaintiff and delivered to Colonial Distributors, Incorporated, from June to November, 1960. There is no dispute as to the amount due nor is it disputed that the goods were delivered to Colonial Distributors, Incorporated. Plaintiff has brought this suit against James L. Arnoult who, it asserts, is the debtor and for whose account the goods were sold and delivered to Colonial Distributors. The question is one of fact: to whom was the credit extended, Mr. Arnoult, individually, or to Colonial upon Arnoult's guarantee?
The business relationship out of which this question arises was substantially as follows:
Sometime in 1957 or 1958, the defendant, Arnoult, and Oran Camet engaged as partners in a sundries business. Camet, it appears, *179 was the person in active charge; but Arnoult, a financially responsible man, was the financial backer of the enterprise. They conducted the business as a partnership under the trade name of Colonial Distributors and bought goods for resale from the plaintiff, Star Sales Company, Inc.
For several months the purchases of the partnership from Star Sales were on a cash basis. In September 1958, Mr. Arnoult, Mr. Camet, and a Mr. Lawson, an employee of Colonial who was taken in as a partner upon putting up $4,100.00 went to the office of Star Sales Company, Inc., and discussed with its secretary-treasurer, Howard Rabin, and bookkeeper, Mr. Lopez, the matter of opening an account for Colonial Distributors for purchase of its goods on credit. The plaintiff was unwilling to extend credit to Colonial Distributors but was satisfied with the financial responsibility of Mr. Arnoult and proposed to bill Mr. Arnoult personally for goods delivered to Colonial. We think the testimony of Mr. Lopez sums up the agreement as follows:
"As I recall it, Mr. Camet requested an account to be opened in the name of Colonial Distributors, which we refused. Some time later, Mr. Camet and Mr. Arnoult visited our office and we explained that we were sorry, that we could not sell Colonial Distributors, and Mr. Arnoult advanced the request that could we sell him and he would permit Colonial Distributors to purchase on his account, and that was the only was [way], after checking the references, that we opened the account for Mr. Arnoult. All of our records from the inception of the account is in the name of James Arnoult."
The record does not disclose if any change was made in the billing of the account after this date, but it is certain that all invoices, with very few exceptions which were explained, were thereafter billed in the name of J. L. Arnoult. The merchandise was picked up at plaintiff's warehouse by an employee of Colonial Distributors. In 1959 Colonial Distributors was incorporated, with the former partners becoming stockholders.
Payments on the account were made by Colonial Distributors, before and after incorporation, and the checks were co-signed by Mr. Arnoult until sometime in 1959 or 1960 (the date is not certain) when Mr. Arnoult "got out" of the company. Thereafter Mr. Arnoult did not sign any checks given on this account. This was before June 1960, from which date the account in question runs. No change in the billing of the account was ever made.
When questioned about his knowledge of the way in which the account was carried, Mr. Arnoult said:
"Oh, I think off and on I knew about it. I don't think there was any great concern on anybody's part that it was carried in my name because, as I said, it was carried back and forth I think probably on two or three different occasions, if I'm correct. I had no active part in the company. The only part I had was information I received from Camet and Ulman and Mr. Lawson when he was interested in the company, he and his wife."
In October 1960, plaintiff discontinued the account because of its delinquency in the amount of $1,941.90. In November, Colonial Distributors, Incorporated, went into bankruptcy, but before doing so notified plaintiff and allowed it to reclaim merchandise to the extent of $702.09, for which credit was given November 9, leaving a balance of $1,239.81. Plaintiff now seeks to hold defendant, Arnoult, personally liable for this balance. From a judgment in favor of defendant, plaintiff has appealed.
There is no question whatever that plaintiff was unwilling to extend credit to Colonial Distributors, either as a partnership or corporation, and would not have done so except upon reliance on the financial responsibility of the defendant, James *180 L. Arnoult. We do not question that the account was carried on plaintiff's books in the name of J. L. Arnoult, but it is equally certain that the plaintiff knew that the actual purchaser of its goods was Colonial Distributors.
We are convinced that the credit would not have been extended except for the assurance given plaintiff by Mr. Arnoult, but this, in our opinion, was an agreement of surety; a promise to be responsible for; a guarantee or promise to pay the account of the purchaser, a third party. Parole evidence cannot be admitted to prove the debt. LSA-C.C. art. 2278. In the absence of some instrument in writing confirming the verbal agreement, which no doubt was made, the plaintiff's suit cannot be maintained.
"Suretyship can not be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract." LSA-C.C. art. 3039.
"* * * It is well settled in this state that one is not liable as surety unless his obligation is assumed in a writing which, in express terms, sets forth the said obligation." Gulf Refining Co. v. Loeb, 195 So. 848 (La.App. Orleans 1940).
A distinction must be made between a promise to pay for goods delivered to another person, thus creating a primary obligation of the person making the promise, and one where the promisor stands good for the account as a guarantor. The question which must be determined is if the promise constitutes a primary or collateral obligation. An examination of the relationship of the parties and the motive and pecuniary interest of the party making the promise may throw light upon the intent and is therefore pertinent in deciding the question: to whom was the credit given? Collier v. Brown, 11 La.App. 567, 141 So. 405 (2d Cir. 1932). This distinction is discussed more fully in National Materials Co. v. Guest, 147 So. 771 (La.App.Orleans 1933), citing Watson Bros. v. Jones, 125 La. 249, 51 So. 187 (1910).
We think a great deal of light is thrown on the intent of the parties from the fact that this was not a promise regarding a single transaction as in Magee v. Crowe, 111 So.2d 552 (La.App. 1st Cir. 1959), and Litton v. Parker, 106 So.2d 776 (La.App. 2d Cir. 1958), where the purchase of specific items were involved, but rather one running over a period of years in the form of an open account. It is apparent that notwithstanding plaintiff's billing system and its carrying the account in the name of Arnoult, its dealings in connection with the account were with Colonial Distributors. When it became apparent that Colonial was about to go into bankruptcy, plaintiff accepted the return of a substantial amount of goods from Colonial. This fact was pointed out by the trial judge as of significance. He reasoned that if Arnoult, a financially responsible person, was in fact the purchaser, the seller woud have been more interested in letting the sale stand and looking to Arnoult, the purchaser, for payment.
The parole evidence rule is well established in our law and caution should be observed in any deviation from its strict application. We concur in the statement of this principle by our brothers of the second circuit who said in the Litton case, supra:
"The jurisprudence is well settled that one entitled to a recovery must make and establish his claim to a legal certainty and by a fair preponderance of the evidence. Even to make it probable is not sufficient. * * *" (Citing cases.)
The question being one of fact, the finding of the trial court will not be disturbed in the absence of manifest error. No such error is apparent to us.
The judgment appealed from is affirmed at appellant's cost.
Affirmed.