CUTRER, Judge.
This case involves a suit on an open account brought by Norris Rader, Inc. (hereinafter Rader), a vendor of building materials, against Paul Lloyd Dartez d/b/a Dartez Construction Company (hereinafter Dartez). Dartez brought a third party demand against Edward and Julie Moore, who were in the process of constructing an addition to their home. Rader sought to collect $5,543.50 allegedly owed by Dartez on building materials purchases, including attorney’s fees and legal interest. Dartez filed a general denial and brought a third party demand against the Moores, seeking judgment against them for any award made to Rader against Dartez.
Following a bench trial, judgment on the main demand was rendered in favor of Rader against Dartez in the principal sum of $5,543.30 plus 25% for attorney’s fees. Judgment for this same amount was also rendered in favor of Dartez in his third party demand against the Moores. Dartez appeals. Rader answers the appeal seeking an increase in attorney’s fees for the appeal.
FACTS
In early April 1981, Edward Moore sought to purchase building materials from Rader for the purpose of making additions to his home. A factual dispute as to how Rader was to be paid for those materials exists. Republican Jackson was an inside salesman for Rader, and he testified that Moore requested the materials be filled to the Paul Dartez account.
Dartez owned and operated the Dartez Construction Company and he had a charge account with Rader whereby he was billed monthly for his purchases. Dartez had been in the construction business for approximately thirty years and built homes which he sold to others. In the months of February 1981 through June 1981, Dartez’s purchases with Rader (reflected by his checks to Rader) averaged slightly less than $10,000.00 per month.
Moore was a cement subcontractor who had known Dartez for approximately fifteen years, and, during that time, Moore had done the cement work on a number of the homes built by Dartez. The home owned by the Moores had been built by Dartez in the late 1960’s, who had sold the house to them. Dartez, at the time of trial, still held a mortgage on the Moore’s home.
Upon learning of Moore’s desire to charge his building materials to the Dartez account, Jackson (Rader’s salesman) called Mr. Norris Rader, Sr., the President of Rader. According to Jackson, Mr. Rader *1011 left to telephone Dartez and returned saying that Dartez had agreed to allow Moore to charge his purchases to the Dartez account.
Mr. Rader testified that Moore would not have been allowed to charge purchases in his own name because of Moore’s unsatisfactory credit standing with Rader. (In March 1981, Rader had filed a suit against Moore to collect on an amount allegedly owed it by Moore.) Mr. Rader stated that he did telephone Dartez who authorized Moore’s purchases to his account. According to Mr. Rader, Dartez “definitely” knew that he was going to be billed for Moore’s purchases.
Stephen Van Cleve was a salesman for Rader, and he handled the Dartez account. Van Cleve had known Dartez for approximately six years and had previously handled purchases by Dartez when Van Cleve worked for another building material supplier. Van Cleve was asked by Mr. Rader to confirm Dartez’s assurances that he would allow Moore to charge items to the Dartez account. Van Cleve testified that he did speak with Dartez who agreed that Moore could charge on his account with Rader. These assurances were relayed to Jackson by Van Cleve. Some time later, after Moore had charged approximately $4,000.00 to the Dartez account, Van Cleve said that he again approached Dartez concerning Moore’s purchases and that Dartez once more approved of the purchases. Jackson, Van Cleve and Mr. Rader testified that they knew that Moore’s purchases were for materials being used in the Moore house. Further, each testified that Dartez was considered responsible for paying the charges made by Moore, and only Dartez was billed for these charges. Payment was not sought from Moore.
On April 6,1981, Moore signed an invoice for $2,346.44 with Rader representing building materials received by him. That invoice was charged to the Dartez account. When Dartez made his lump sum payment to Rader in May 1981 for his April purchases ($10,291.62), this included payment for the $2,346.44 in materials received by Moore. In May 1981, Moore made six more charges, all to the Dartez account totaling $3,185.43. When Dartez made his payment in June (of $12,428.46), he included payment for the invoices signed by Moore. (Rader included, in its bills to its customers, copies of the invoices representing the charges incurred.) Therefore, Dartez paid a total of $5,531.87 on Moore’s purchases in April and May.
Dartez, on the other hand, testified that he had never authorized Moore to make charges to his account, and he denied making any of the statements attributed to him by Van Cleve and Mr. Rader. Dartez stated that he first became aware of Moore’s charges to his account after viewing his May invoices several days after writing his June check to Rader. He averred that the payments by him were made in error and stated that he told Van Cleve that he would not be responsible for Moore’s charges.
The testimony by Moore which was pertinent to the issues states as follows:

“Q. Okay. And you weren’t extended credit by Mr. Rader, isn’t that correct? He didn’t give you credit, did he?

“A. No, he didn’t.

“Q. Okay. Then who did he give credit to? Do you know that?

“A. He gave credit to Mr. Paul Dar-tez.

“Q. Okay.

“A. That’s right.

“Q. Do you know that he was looking'to Mr. Dartez to get paid?

“A. And Mr. Dartez was looking at me for his money. That’s where it’s at right now. That’s where it’s at. ”

Moore made several more purchases from Rader in June and July, the last occurring on July 14,1981. Those purchases, totaling $4,389.20, were all charged to the Dartez account. Dartez refused to pay this amount. This sum was later paid by Moore with money received by him from a loan made by a finance company.
Prior to June 1981, Rader billed Dartez for all of his monthly charges in one lump sum. In June Rader began its billing by *1012 Computer and kept a separate record of the charges incurred by Dartez on each of his construction jobs. At that time Dartez was in the process of building several business speculation homes, two of which we shall refer to herein as Job 12 and Job 13. In June and July 1981, Dartez charged with Rader $7,093.84 for Job 12. From June through August 1981, Dartez charged more than $7,000.00 for Job 13.
On August 10, 1981, Dartez sent Rader a check for $7,527.62, indicating on the bottom of the check that it was to be credited for Dartez’s charges on Jobs 12 and 13. Rader complied with the request by crediting $7,093.84 to Job 12 (paying that account in full) and the balance ($433.78) was credited to Job 13. On October 23, 1981, Rader’s records reflected that another payment was credited to Job 13 in the amount of $1,685.28. This left a balance due on Job 13 of $5,543.30, the sum sued for in this suit.
Demand on Dartez for payment on this account was made by Rader on September 15, 1981, and this suit was filed by Rader on April 1, 1982, seeking the $5,543.30 balance remaining on Job 13.
The posture of Rader was that the Moore’s purchases had been paid in full: Dartez had paid a total of $5,531.87 for Moore’s purchases in April and May 1981, and the finance company paid the balance owed Rader by the Moores of $4,389.20. Rader sought to simply collect the balance on Job 13 of $5,543.30.
Dartez took the position that any amount he had paid Rader for Moore’s purchases was in error, and that he should have been given credit for the two payments in May and June on the Moore charges of $5,531.87.
After considering the conflicting testimony between the parties as to who would be responsible for paying Moore’s charges, the trial court found that Dartez had agreed that those purchases could be charged to his account. The lower court then recognized Rader’s claim to the $5,543.30 owed by Dartez on Job 13. Dar-tez’s third party claim against the Moores was recognized in the amount of $5,531.87, the amount of Moore’s charges paid by Dartez. Both Rader and Dartez were awarded 25% in attorney’s fees on the principal award to each plus legal interest.
ISSUE
The substantial issue raised by this appeal is:
Whether the trial court was clearly wrong in finding that Dartez agreed to allow Moore to make charges to the Dartez account and, if not, whether parol evidence for that agreement would be admissible.
Other less substantial questions are presented and will be disposed of herein.
RESPONSIBILITY OF DARTEZ
The trial court made the factual finding that Dartez did agree that Moore could make charges to Dartez’s account with Rader. We find that no manifest error exists in this finding. Van Cleve and Mr. Rader each testified that Dartez assured them that he would be responsible for charges by Moore. Each of Moore’s purchases were billed to the Dartez account, and payment was only sought from Dartez. Jackson and Mr. Rader testified consistently that Moore requested that his charges be billed to Dartez. The charges by Moore in April and May 1981 were, in fact, billed to and paid by Dartez.
Moore’s testimony (some quoted supra) supports the testimony of the plaintiff’s witnesses. Only Dartez denied his agreement to pay Moore’s charges. Therefore, the trial court’s finding that Dartez agreed to be billed for Moore’s charges is fully supported by the record.
Having found that Dartez did agree to become responsible for Moore’s charges, the next question becomes whether parol evidence of this agreement was admissible at trial. Counsel for Dartez timely objected to any parol evidence establishing Dar-tez’s obligation on the basis of LSA-C.C. art. 2278(3), which declares inadmissible any parol evidence seeking to “prove any promise to pay the debt of a third person.”
*1013 The courts have steadfastly recognized this rule which effectively requires suretyship agreements or agreements to pay the debt of another to be in writing; otherwise, parol evidence is not admissible to prove the existence of those agreements. See, e.g., Seashell, Inc. v. Simon, 398 So.2d 99 (La.App. 3rd Cir.1981); Star Sales Company v. Arnoult, 169 So.2d 178 (La.App. 4th Cir.1964). However, art. 2278 is subject to a well-recognized exception which was recently stated as follows:

“We must determine whether defendant’s promise to pay constituted a primary or collateral obligation. The decisive question which must be answered is: to whom was the credit extended? In order to determine to whom the credit was extended we must examine the relationship of the parties and the motive and pecuniary interest of the party making the promise. Seashell, Inc. v. Simon, 398 So.2d 99 (La.App. 3d Cir.1981); Star Sales Company v. Arnoult, 169 So.2d 178 (La.App. 4th Cir. 1964). If credit was extended to defendant, then parol evidence is admissible to prove defendant’s promise to pay, because the promise to pay constituted a primary obligation. ”

Marmedic, Inc. v. Intern. Ship Mgmt., 425 So.2d 878 (La.App. 4th Cir.1983).
In the instant case, the facts clearly reflect that Dartez was extended credit by Rader. Moore was not allowed to make charges in his own name with Rader because of his poor credit standing; the arrangement between the parties establishes that Dartez was the primary obligor of Moore’s purchases and parol evidence is admissible to prove Dartez’s promise to pay this primary obligation.
Dartez also argues that he should be released from liability to Rader because of the latter’s decision at trial to “abandon” its claim against the Moores. Rader had originally brought suit against both Dartez and the Moores. Rader, however, dismissed its claim against the Moores when it was discovered that all of Moore’s purchases had been paid. Dartez contends that Rader’s allegation that the Moores were jointly liable with Dartez, coupled with Rader’s subsequent decision to abandon any claim against the Moores, amounted to a release of liability as to Dartez. This argument is without merit. The facts show that, at the time of trial, no indebtedness was owed for purchases made by Moore. The dismissal of the Moores could not have the effect of releasing Dartez.
Dartez further alleges that the trial court erred in denying his motion for a new trial. The alleged basis for the new trial was the production of several invoices by Dartez (in his possession prior to trial) purportedly in conflict with testimony provided by Rader and accepted by the trial court. We have carefully examined the record and find no abuse of discretion in the trial court’s denial of Dartez’s motion for a new trial.
Rader filed an answer to the appeal seeking an award of additional attorney’s fees for the appeal. Rader seeks an additional award of 5% of the principal award, which amounts to approximately $275.00. We find an additional award of $275.00 as attorney’s fees to be appropriate.
For the foregoing reasons, the award of the trial court in the principal demand is amended by increasing the award of attorney’s fees in the amount of $275.00. In all other respects the trial court judgment is affirmed. Costs of this appeal are assessed to the defendant-appellant, Dartez.
AMENDED AND AFFIRMED.