537 So.2d 221 (1988)
Mrs. Estelle Polmer RABIN
v.
Margaret S. BLAZAS and Harry Frisch.
No. CA 8299.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1988.
On Rehearing December 13, 1988.
*222 Philip P. Spencer, New Orleans, for plaintiff.
Dennis P. Couvillion, Lee, Martiny & Caracci, Metairie, for defendant.
Before BARRY, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
The defendant, Harry Frisch, appeals from a judgment rendered against him for breach of an agreement to purchase real property. Frisch argues that the judgment of the trial court should be reversed because 1) the court erred in failing to rescind the agreement on the ground that he was incapable of contracting due to his age and infirmity; and 2) the court erred in awarding an amount in excess of that stated in the liquidated damages clause of the agreement. For the reasons that follow, we affirm the judgment of the trial court as to the breach of contract claim against Frisch and modify as to the amount of damages awarded.
On April 11, 1986 Margaret S. Blazas and defendant Frisch signed a Gertrude Gardner Realtors, Inc. document entitled "agreement to purchase or sell." They signed on the lines beneath the word "offeror" for the purchase of real property located at 801-03 Desire Street and 3401-03 Dauphine Street in New Orleans. The purchase offer was for $55,000.00, all cash. Lines 34 through 37 of the agreement provide:
Upon acceptance of this offer, seller and purchaser shall be bound by all its terms and conditions and purchaser becomes obligated to deposit with seller's agent not later than 48 hours from acceptance, 10% of the purchase price amounting to $_________ and failure to do shall be considered a breach thereof, and seller shall have the right, at sellers option, to reinstate said property for sale and to demand liquidated damages equal to the amount of the deposit or specific performance, and purchaser shall, in either event, be liable for the agents commission, attorneys fees and costs.

(Emphasis added.) On the line provided for the amount reflecting 10% of the purchase price, the figure $5,500.00, and the word "chek" (sic), are hand written. Alex Seidenfield is listed as both the selling and the listing agent and Gertrude Gardner is listed as the Broker. The offer was accepted by the seller, plaintiff Estelle P. Rabin, on the same date, April 11, 1986.[1]
Neither Frisch nor Blazas tendered $5,500.00 to Seidenfield within forty-eight hours of the offer's acceptance as was required in the agreement. Rabin then filed this action against Frisch and Blazas alleging breach of contract as a result of their failure to deposit the same. She sought damages as follows: $11,000.00 for breach of contract; $450.00 for the loss of rent of two apartments included in the property subject to the sale[2]; $3,300.00 in commission due Gertrude Garnder[3]; and $3,000.00 attorneys' fees plus costs.
After a bench trial, judgment was rendered against Frisch in the principal amount of $12,450.00, plus costs, allocated as follows: $5,500.00 for breach of contract; $5,500.00 for liquidated damages; $450.00 for lost rent on the property subject to the sale, and $1,000.00 for attorney's fees.[4][5]
By his first assignment of error defendant Frisch, an eighty year old man with hearing difficulty, argues that the contract as to him should be rescinded because, *223 due to his age and mental infirmity, he did not have the mental capacity to contract. In support of this contention, Frisch points to the testimony of Dr. Jack C. Castrogiovanni, his internist. Dr. Castrogiovanni's deposition was admitted into evidence over the plaintiff's objection.[6] Dr. Castrogiovanni stated that Frisch suffered from organic brain syndrome. Dr. Castrogiovanni described this disease as "characterized by recent memory loss, inability to have introspection frequently into the acts of one, progressive inability to care for one's own needs, and it's more or less like sliding scale (of degree)." However, this diagnosis was not made until September 19, 1986, more than five months after Frisch entered into the agreement in question. Moreover, although Dr. Castrogiovanni also testified that organic brain syndrome develops over a period of time (so that it could have existed six months earlier), he did not testify that Frisch had organic brain syndrome at least six months before the diagnosis was made. In any case, it is clear that Frisch has never been interdicted.
Article 1925 of the Louisiana Civil Code provides:
A noninterdicted person, who was deprived of reason at the time of contracting, may obtain rescission of an onerous contract upon the ground of incapacity only upon showing that the other party knew or should have known that person's incapacity. (Emphasis added.) Thus, because Frisch has failed to prove, in the first instance, that he was deprived of reason at the time of contracting, the trial court was correct in not rescinding the contract as to Frisch. Moreover, even if Frisch were incapacitated he has, nevertheless, failed in his second burden of proving that "the other party", i.e., Seidenfeld, knew or should have known of such incapacity.
Our review of Seidenfeld's testimony with respect to Frisch's reasoning capacity both before, as well as at, the time of contracting, bears this out. Seidenfeld testified that, although Frisch had difficulty hearing, he did appear to understand what he, Seidenfeld, was saying. Seidenfeld also portrayed Frisch, who owned several properties, as a man knowledgeable in real estate transactions and as having asked many questions with respect to the property he was about to purchase on April 11, 1986, the date of the sale.
Before April 11, 1986, Seidenfeld met Frisch on only one other occasion, April 8 or 9, 1986. On that day, Seidenfeld met with Blazas to show her the property. According to Seidenfeld, Frisch drove Blazas to the site of the property, rolled down the car window and had a discussion with Seidenfeld about interest rates and financing and the advantage of paying cash. In short, there was nothing to put Seidenfeld on notice that Frisch suffered from any mental infirmity either before or on the day Frisch signed the agreement.
By his second assignment of error, defendant contends that the court erred in awarding plaintiff damages in excess of the contractual liquidated damages provision.
It is clear under the terms of the contract that, upon failure to make the required $5,500.00 deposit, the buyer becomes liable for $5,500.00 in liquidated damages "or" specific performancenot both. This is consistent with La.Civ.Code art. 2007. Rabin opted to exercise the liquidated damages provision rather than to demand specific performance. However, in awarding Rabin $5,500.00 liquidated damages plus $5,500.00 for breach of contract, the trial court was awarding liquidated damages and partial specific performance. That was error.
The trial court's award of $450.00 for lost rent also was error. The $5,500.00 liquidated damages clause fixes the amount of all damages that may be recovered under the contract. By contract, the parties substituted the liquidated sum of $5,500.00 for actual damages with the result that, upon breach, actual damages need not be *224 determined and may not be awarded. Thus, in opting to exercise the liquidated damages clause, Rabin was entitled to recover $5,500.00, but no more.
The contract also provides for attorney's fees and costs regardless of whether liquidated damages or specific performance is granted and the trial court awarded $1,000.00 attorney's fees plus costs. The appellants do not complain about the reasonableness of the amount awarded as attorney's fees, so there is no issue with respect to attorney's fees before us.
In her brief in response to the appellant's brief, Rabin complains that the $1,000.00 attorney's fee awarded by the trial court should be increased to $3,000.00. However, Rabin failed to file an appeal or answer the appeal, so we cannot consider this issue.
Rabin also requests an award of attorney's fees for having to defend this appeal. Of course, as the dissent points out, there is authority for the proposition that a request for additional attorneys fees (for legal services rendered in connection with the defending of an appeal) in the answer to an appeal is sufficient to place that issue before the court of appeal. Norris Rader, Inc. v. Dartez, 453 So.2d 1009 (La.App. 3rd Cir.1984). (In Dartez, the appellee was awarded an additional $275.00 in attorney's fees for having defended an unsuccessful appeal.) Thus, this issue is squarely before us. However, we think that an award of attorney's fees for the defense of an appeal is unwarranted where, as here, the appeal is largely successful.
It is true that the contract requires the purchaser to pay the seller's attorney's fees resulting from the purchasers breach. But we interpret this to mean attorney's fees in connection with collecting the damages due as a result of the breachi.e.in collecting the $5,500.00 liquidated damages. In this case the appeal resulted in the reversal of amounts awarded which were not owed as part of the liquidated damages, and to which the appellee was not entitled under the contract.
Accordingly, IT IS ORDERED that the judgment of the trial court be amended to reduce plaintiff's liquidated damage award to $5,500.00 and to set aside the $450.00 for lost rent, and as amended is affirmed.
Amended And As Amended Affirmed.
PLOTKIN, J., concurs in part, dissents in part.
PLOTKIN, Judge, concurring in part, dissenting in part:
I respectfully concur in the majority's decision reducing the appellee's liquidated damages award, but would increase the appellee's award for attorney's fees by $1,500 for services rendered on appeal to this court.
The jurisprudence on the issue is clear that a request for additional attorney's fees in the answer to an appeal is sufficient to place that issue before the court of appeal. Norris Rader, Inc. v. Dartez, 453 So.2d 1009 (La.App. 3d Cir.1984). The party is not required to file a cross-appeal in order to be entitled to consideration of the issue, as the majority notes.
What is not so clear is whether an appellee should be awarded additional attorney's fees when the appellant is partially successful on appeal. However, under the facts of the instant case, I believe the appellee is entitled to additional fees. The subject contract provides that "purchaser shall ... be liable for the agents commission, attorneys fees and costs." Under those express terms of the contract, the appellant should be required to pay all attorney's fees regardless of whether his appeal was justified and despite the fact it was partially successful. The appellee should not be required to bear the cost of defending his rights on appeal when the reduction in the award was based entirely on a error made by the trial judge.

ON APPLICATION FOR REHEARING
We granted rehearing for the limited purpose of reconsidering the plaintiff's request that we increase the amount of attorney's fees awarded by the trial court. In our original opinion, the majority declined to consider that issue on the basis of *225 its finding that the issue was not before us because the plaintiff failed to file a cross-appeal. After reconsideration, we agree that a request for additional attorney's fees in the answer to an appeal is sufficient to place that issue before that appeals court. Accordingly, we raise the attorney's fees by $1,500 to represent the services on appeal.
The contract provides that the purchaser would be liable for attorney's fees and costs. We interpret that provision to include all fees and costs required to litigate any controversy arising out of the contract. Therefore, the purchaser must be liable for a reasonable amount of fees required to defend the appeal.
Regarding the plaintiff's other contentionthat the $1,000 fees awarded for the attorney's services at the trial court level should be increased to $3,000we find that the record is insufficient to support such an increase. We decline that request.
AMENDED AND AFFIRMED AS AMENDED.
ARMSTRONG, J., dissents in part with reasons.
ARMSTRONG, Judge, dissents in part with reasons.
I respectfully dissent from that portion of the majority opinion on rehearing which increases the award of attorney's fees to plaintiff by $1,500 as compensation for legal services rendered on appeal. As stated in the original majority opinion, I feel that an award of attorney's fees for the defense of an appeal is unwarranted where, as in the case at bar, the appeal was largely successful. I agree with and join the majority of the court in holding that the record does not furnish a sufficient basis to support an increase in the trial court's award of attorney's fees for legal services rendered at the trial court level.
NOTES
[1] See plaintiff's Exhibit No. 2.
[2] The agreement required that the apartments subject to the sale be vacated by act of sale. The tenants were asked to vacate by act of sale, and thus paid no rent for that month.
[3] Rabin subsequently waived any right to claim an agents' commission at trial. See transcript at 12.
[4] On September 12, 1986 a default judgment was rendered against Blazas in the principal amount of $5,500.00 plus attorneys' fees in the amount of $2,000.00 and all costs. That judgment is not before us for review.
[5] The trial court's judgment approved a $3,000.00 attorney's fee, but reduced it by $2,000.00, the amount assessed against Blazas in the September 12, 1986 default judgment.
[6] We need not decide the correctness of the trial court's decision to admit this testimony because, even assuming its admission was in error, our result would be the same.