643 So.2d 203 (1994)
Dorothy L. GRIMSLEY, Plaintiff-Appellee,
v.
Chris LENOX, et ux., Defendants-Appellants.
No. 93-1618.
Court of Appeal of Louisiana, Third Circuit.
September 14, 1994.
*204 John Felton Blackwell, for Dorothy L. Grimsley.
Michael Dean Hebert, for Chris Lenox, et al.
Before KNOLL, THIBODEAUX and SAUNDERS, JJ.
KNOLL, Judge.
This appeal concerns an action to enforce specific performance of a buy/sell agreement concerning residential real estate in New Iberia, Louisiana. The trial court held that Chris Lenox and his wife, Valerie, (hereafter the Lenoxes) breached their obligation to purchase a house and lot from Dorothy L. Grimsley. Because of the impossibility of the Lenoxes to obtain financing, the trial court ordered the Lenoxes to pay Grimsley's attorney's fees and liquidated damages of $500. After Grimsley motioned for a new trial, the trial court found that she had been damaged by the Lenoxes breach of contract in the amount of $15,000, the difference between the amount the Lenoxes offered for the house and lot and the next highest purchase offer, and ordered them to pay her this additional sum, and additional attorney's fees and costs.
The Lenoxes appeal, contending that the trial court erred: (1) in holding that they breached the buy/sell agreement by not disclosing a student loan judgment to Iberia Savings Bank; (2) in granting a new trial on the issue of damages; and, (3) should we reverse the trial court as stated in assignment one, we are requested to award liquidated damages of $500 in their favor, along with their reasonable attorney's fees. We affirm in part, reverse in part and render.

FACTS
On June 20, 1991, the Lenoxes made a two-part written offer to Grimsley for the purchase of her residence at 105 Stockstill Street in New Iberia. Grimsley rejected Lenoxes offer which was tied to owner financing and accepted the Lenoxes purchase offer which required them to obtain a $115,000 loan. It is undisputed that the Lenoxes agreed to the purchase option accepted by Grimsley when they deposited $500 with Grimsley's real estate agent. The agreement provided that the purchase price was $115,000 and further stated:
Purchaser [the Lenoxes] agrees to make formal application for a loan with a lender within 3 days from acceptance of this offer, pay an application fee, furnish all information, documentation or other items asked for by lender, strive diligently to obtain loan approval, and cooperate fully with all parties involved in this transaction through closing.
Should purchaser, seller or agent on behalf of either be unable to obtain the loan stipulated within 21 days from acceptance hereof, this contract shall then become null and void and seller authorizes agent to return the purchaser's deposit in full without formalities upon receipt of written proof of loan denial.
Commitment by lender to make the loan subject to approval of title, lender-required repairs, termite inspection/treatment/repairs, and/or final inspection, shall constitute obtaining of loan.
In the event the purchaser fails to perform every condition of this contract within the time specified, they waive any right to the deposit, and forfeit same as liquidated damages without formal demand, or the seller may demand specific performance... Either party hereto who fails to comply with all of the terms of this contract, is obligated to pay the broker's fee for services rendered, and any fee, cost, or expense incurred in the interim in connection with this transaction, including reasonable attorney's fees and court costs incurred in enforcing collection.
On June 24, 1991, Chris Lenox obtained a loan application from Don Hollier, a loan officer at Iberia Savings Bank and returned it completed on June 26. For reasons which will be elaborated upon hereafter, either because of a student loan judgment against *205 Valerie Lenox obtained against her on March 7, 1990, in the amount of $15,000.81, or an untimely appraisal, Iberia Savings Bank did not act upon the Lenoxes' loan application until July 31, 1991, fourteen days after the 21 day financing period had expired. Iberia Savings's loan approval was conditioned upon "complete erasure of [the] student loan judgment from the credit records." When this condition was not met, the loan could not be made.

BREACH OF PURCHASE AGREEMENT
The Lenoxes first contend that the trial court erred in holding that they breached the purchase agreement by failing to disclose a student loan judgment against Valerie Lenox when they applied for the loan with Iberia Savings. Instead, they argue that they were not in bad faith in not disclosing the judgment and that it was the unexplained delay in obtaining the property appraisal which protracted the loan application.
As background to this assignment of error, knowledge of the following facts is needed. In the loan application the Lenoxes filed with Iberia Savings, they were asked: "Are there any outstanding judgments against you? Are you a party to a lawsuit?" They each responded negatively. Contrary to their assertion, the Student Loan Marketing Association (SLMA) filed suit in Lafayette Parish on December 15, 1989, against Valerie Lenox under her maiden name, Reed, to recover delinquent student loans she obtained while she was a medical student. The records of Lafayette Parish show that Valerie Reed was served personally on December 21, 1989, and on March 7, 1990, SLMA obtained a judgment by default against her. In its oral reasons for judgment the trial court stated:
It was incumbent upon them [the Lenoxes]... to furnish all information, documentation, or other items asked for by the lender [Iberia Savings]. Whether inadvertently or not, they did not do that. And it was the withholding of the information about the student loan that essentially killed this deal. Now, even if the defendants were unaware of a judgment being rendered against Mrs. Lenox, there is no excuse for leaving this item off the application. I'm not saying it was done intentionally, but there's no excuse for it. It should have been done. It's called for by the agreement. And it was certainly, at best, negligence not to include that information.
* * * * * *
Now, I must make mention about the appraisal being beyond the 21-day period, because in fact it was. As ... I would compute it, if the counter offer was accepted on June the 24th, roughly July 15th would be the 21-day period. And the appraisal was done afterwards. I frankly think, first of all, that the problems with the credit report caused that; and that, had it not been for that, the appraisal would have been pushed more timely.... I kinda' think that's the logical explanation of what happened there. And besides that, it would seem like it was an agreement on the part of both sides to extend this thing to July 31st. Everybody seemed to agree with that. No mention was made at the time that the appraisal was beyond the 21-day period.
In Farnsworth/Samuel Ltd. v. Cervini, 492 So.2d 1245, 1246 (La.App. 4 Cir.1986), writ denied, 497 So.2d 316 (La.1986), our fellow judges of the Fourth Circuit stated:
"A purchaser who is unable to obtain a loan stipulated in a purchase agreement, through no fault of his own, is normally relieved of his obligation to purchase and entitled to a return of his deposit. The purchaser has an implied obligation to make a good-faith effort to obtain the financing, however, and if he fails to do so, the suspensive condition to the act of sale is considered as fulfilled, and he is estopped from asserting the nullity of the contract based upon his inability to obtain financing. LSA-C.C. Art. 1772 (formerly LSA-C.C. Art. 2040 [1870])." (Citations omitted.)
Furthermore, in Woods v. Austin, 347 So.2d 897, 899 (La.App. 3 Cir.1977), we stated, "Whether ... [the purchaser] has acted in good faith depends on the facts and circumstances in each case."
*206 After reviewing the record in light of our appellate standard of review, we find the trial court's holding of the Lenoxes' bad faith is supported by the evidence and cannot be classified as clearly wrong. Accordingly, we agree that the Lenoxes are estopped from asserting the nullity of the purchase contract based upon their inability to obtain financing.

REMEDY FOR BREACH OF PURCHASE AGREEMENT
The Lenoxes next contend that the trial court erred in casting them in judgment for the $15,000 actual damages Grimsley suffered. They argue that when the trial court determined that specific performance was impossible, the only remedy it could order was forfeiture of their $500 deposit as stipulated damages. We agree.
LSA-C.C. Art. 2005 states:
"Parties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation.
That stipulation gives rise to a secondary obligation for the purpose of enforcing the principal one."
The jurisprudence states that a stipulated damage clause fixes the amount of all damages that may be recovered, and actual damages may not be awarded. Gremillion's Heirs v. Rapides Parish Police, 493 So.2d 584 (La.1986); Rabin v. Blazas, 537 So.2d 221 (La.App. 4 Cir.1988).
In the present case, the purchase agreement provided:
"In the event the purchaser fails to perform every condition of this contract within the time specified, they waive any right to the [$500] deposit and forfeit same as liquidated damages without formal demand...."
Contrary to the purchase agreement, the trial court, on Grimsley's motion for new trial, awarded actual damages to Grimsley in the amount of $15,000. In light of the codal articles pertinent to this issue and the interpretive jurisprudence, it is clear that the trial court erred as a matter of law in awarding Grimsley actual damages. Accordingly, we reverse the trial court's award of actual damages and instead order the Lenoxes's $500 deposit forfeited to Grimsley in accordance with their written agreement.
Having reversed the trial court's award of actual damages, we turn to its award of reasonable attorney's fees to Grimsley. The record shows that Grimsley sued the Lenoxes for specific performance, or, alternatively, $115,000 together with mental anguish damages, and reasonable attorney's fees. From the written agreement which the parties signed, it is clear that Grimsley did not have to sue the Lenoxes for the $500. Since we simply recognize the agreement's provision for the forfeiture of the liquidated damage deposit, without the necessity of formal demand, and reverse the trial court's judgment for actual damages, we likewise reverse the award of attorney's fees awarded to Grimsley.
Lastly, having found no error in the trial court's disposition of assignment of error one, we need not reach the Lenoxes's claim for liquidated damages and their request for the award of attorney's fees, since they breached the agreement.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects, except that the award of the trial court of actual damages and attorney's fees to Dorothy L. Grimsley is reversed and set aside. Costs of this appeal are assessed one-half to Grimsley and one-half to the Lenoxes.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.