644 So.2d 219 (1994)
Jeanne L. Adams, Wife of/and Philip R. ADAMS, Sr.
v.
FIRST NATIONAL BANK OF COMMERCE and Ken Orillion.
Jeanne L. ADAMS, et al.
v.
FIRST NATIONAL BANK OF COMMERCE and Ken Orillion.
Nos. 93-CA-2346, 94-CA-0486.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1994.
Rehearing Denied November 15, 1994.
*221 Daniel A. Smith, Michael W. Boleware, Deutsch, Kerrigan & Stiles, New Orleans, for appellees.
Kenneth A. Goodwin, New Orleans, for appellants.
Before BARRY, LOBRANO and WARD, JJ.
LOBRANO, Judge.
This consolidated appeal arises from judgments on an exception of prescription in favor of defendants/appellees First National Bank of Commerce (FNBC) and Patrick Orillion and against plaintiffs/appellants Jeanne L. Adams, wife of/and Philip R. Adams, Sr. (the Adams) dismissing their suit for damages against defendants.

FACTS AND PROCEDURAL HISTORY:[1]
The Adams were longstanding customers of FNBC. The bank held the second mortgage on their home in Chateau Estates subdivision in Kenner, Louisiana.
In 1991, due to poor economic conditions, the Adams sustained financial hardship. As a result, they became delinquent on their mortgage payments. On October 10, 1991, the 70th day of arrearages, FNBC filed an executory process action in the 24th Judicial District Court in Jefferson Parish.
On October 16, 1991, a writ of seizure and sale was issued and personally served on the Adams on November 14, 1991. The first scheduled sheriff's sale was set for January 8, 1992. Due to a typographical error in the advertisement, the sale was re-advertised and re-set for January 15, 1992.
On January 13, 1992, the Adams filed a Chapter 7 Bankruptcy Petition for the purpose of preventing the January 15, 1992 sale of their home. In response, FNBC filed a Motion for Relief from the Automatic Stay in order to proceed with the foreclosure. A hearing on the motion was held April 14, 1992 and subsequently granted on April 15, 1992. The property was again advertised for sale at public auction. It was ultimately sold at sheriff's sale on June 3, 1992.
On June 2, 1993, the Adams filed a petition for damages against FNBC and its employee, Orillion, alleging violations of the Unfair Trade Practices and Consumer Protection Law; Abuse of Rights; Breach of Duty of Good Faith and Negligent Misrepresentation. Their petition alleges that following the seizure of their home in October, 1991, Orillion offered them two "deals" to stop the foreclosure proceedings:
1) To sell their home to one of Orillion's friends at a $40,000.00 loss to the plaintiffs; or
2) To list the property with a real estate agent named by Orillion, and, in return, plaintiffs could take as much time as possible to sell the home on the open market.
The Adams listed the property for sale but shortly thereafter withdrew the listing agreement upon belief that the "deals" were coercive, fraudulent and prompted by illwill and sinister motivation. They allege Orillion, out of retaliation, refused to further negotiate and went ahead with the foreclosure.
*222 In response to the suit, FNBC and Orillion filed Peremptory Exceptions of No Right of Action, No Cause of Action and Prescription.
In a judgment dated September 30, 1993 the trial court maintained FNBC's Exceptions of No Right of Action and No Cause of Action relative to the Louisiana Unfair Trade Practices and Consumer Protection Law and for Negligent Misrepresentation, respectively. The court dismissed FNBC's Exception of No Cause of Action as to the Abuse of Rights Doctrine. The Court, however, maintained FNBC's Exception of Prescription dismissing all of the claims.
In a judgment dated January 19, 1994, the court dismissed Orillion's Exceptions of No Cause of Action and No Right of Action relative to the Louisiana Unfair Trade Practices and Consumer Protection Law and for Negligent Misrepresentation, respectively. The court maintained Orillion's Exception of Prescription, dismissing all of the claims against him.
With respect to the September 30th judgment, the court reasoned:
"The Court finds that the Louisiana Unfair Trade Practices and Consumer Protection LawRS 51:1401, et seq.prohibits a cause of action against First NBC.
The Court dismisses the cause of action for negligent misrepresentation finding that the elements required are not present.
The Court maintains the exception of prescription to the entire petition for plaintiffs finding that prescription commenced to run at the time the statements were made to the plaintiffs in 1991."
With respect to the January 19th judgment, the Court stated:
"The Court finds that the exemption of a federally chartered bank under RS 51:1406 does not apply to employees of the federally chartered bank. Hence, there is a cause of action and right of action in favor of the plaintiffs against the defendant Patrick Orillion.
However, the Court finds that the cause of action has prescribed since it is a one year prescriptive periodnot a ten year prescriptive period."
The Adams appeal both judgments asserting that the trial court erred in maintaining the prescriptive pleas. In support they argue that the prescriptive period is ten years, as well as the doctrine of contra non valentem. No appeal was taken from the dismissal of FNBC on exceptions of no cause of action with respect to the unfair trade practices claim and the claim for negligent misrepresentation.
Orillion answered the appeal asserting that the court erred in dismissing his exception of no cause of action as to the negligent misrepresentation claim, and his exception of no right of action as to the unfair trade practices claim.
We affirm the prescription plea.

PRESCRIPTION:
Plaintiffs assert the trial court erred in finding that the one year prescriptive period commenced "at the time the statements were made" and had thus prescribed. They assert that the court failed to consider the breach of contract action which carries a ten year prescriptive period. We disagree.
Initially, we note that the trial court did consider plaintiffs' argument concerning the ten year period. The court specifically noted in its reasons that the claims prescribed "since it is a one year prescriptive period not a ten year prescriptive period." We find that conclusion correct.
In the context of the factual allegations of this case, a breach of contract occurs if contractual discretion is exercised in bad faith, a term connoting fraud, deception or sinisterly-motivated nonfulfillment of an obligation. See, Palombo v. Broussard, 370 So.2d 216 (La.App. 3rd Cir.1979). "Bad faith" is the opposite of "good faith", generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Palombo, supra, citing Black's Law Dictionary.
In the instant case, plaintiff has failed to demonstrate that FNBC or Orillion *223 had any contractual obligation to negotiate to prevent the sheriff's sale. FNBC and Orillion could have gone forward with the foreclosure without ever contacting the plaintiffs. Thus, in the absence of an obligation or duty to negotiate to stop the sale, Orillion's actions, if true, could not have constituted a breach of contract to negotiate in good faith.
Every pleading must be construed as to do substantial justice. C.C. Pro. Art. 865. Accordingly, courts look beyond mere headings and terminology used on or in pleadings to determine the circumstances and the true nature of the suit. Scullin Individually and on Behalf of American Companies v. Prudential Ins. Co. of America, 421 So.2d 470 (La.App. 4th Cir.1982); Griffith v. Metry Cab Service, Inc., 266 So.2d 739 (La.App. 4th Cir.1972).
A review of the petition shows plaintiffs' claims stem from the alleged verbal misconduct of Orillion after their home was seized. Verbal misconduct is delictual in nature. A "delict" is defined as a "tort; a wrong". Blacks' Law Dictionary 384 (5th ed. 1979).
Louisiana Civil Code Article 3492 provides:
"Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained ..."[2]
Comment (b) to the above Article provides:
"(b) The one year prescription applies to all delictual actions. Article 3536(1) of the Louisiana Civil Code of 1870 speaks of liability caused by libelous statements, animals, and offenses and quasi-offenses. This Article expresses the principle embodied in Article 3536(1) of the 1870 Code. The notion of delictual liability includes: intentional misconduct, negligence, abuse of right, and liability without negligence." (citations omitted).
Prescription begins to run when the plaintiff has actual or constructive knowledge of the alleged tortious act. Mistich v. Cordis Mfg. Co., 607 So.2d 955 (La.App. 4th Cir. 1992).
Constructive notice is found at the point at which a plaintiff has sufficient information to excite attention sufficient to prompt further inquiry and includes knowledge or notice of everything to which that inquiry might lead. Mistich, supra.
In Guaranty Bank of Mamou v. Fontenot, 551 So.2d 804 (La.App. 3rd Cir. 1989), the reviewing court found that plaintiff's reconventional demand, which was based on alleged false statements by the bank's loan officer, was delictual in nature and subject to the one year liberative prescription. See also, Gulf States Land and Development Inc. v. Quachita National Bank In Monroe, 612 So.2d 1031 (La.App. 2nd Cir.1993), writ den. 618 So.2d 406 (La. 1993). By analogy, the verbal misconduct in the instant case is also delictual in nature. Orillion's statements, at best were self serving and smacked of extortion. It was at this point that the plaintiffs knew or should have known that they were in jeopardy. Prescription commenced at that time. Evidence that plaintiffs knew of alleged wrongdoings is found in the fact that they withdrew the listing agreement offered by Orillion shortly after it was signed. This occurred during the third quarter of 1991 according to the allegations of paragraphs V and VI of the petition. Suit was not filed until June 2, 1993.
Plaintiff's argue however, that the one year prescriptive period did not commence until the date of the actual sheriff's sale, June 3, 1992. It is that date, they assert, that damages were actually sustained and prescription commenced. We disagree.
Plaintiff's claim is not for the loss of their home because of the foreclosure, but for the emotional and mental distress caused by Orillion's actions and FNBC's failure to negotiate. Although prescription does not commence until a tortious act actually produces damage, there is no requirement that the quantum of damages be certain or that they be fully incurred. Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992) "Thus in cases *224 in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage." Harvey, supra at 354.
In the instant case, plaintiffs' emotional distress commenced at the time of Orillion's alleged tortious acts. Although the "totality" of that distress may not have been realized until the property was sold, there certainly was sufficient damage initially incurred to commence prescription. We therefore affirm the prescription plea.

CONTRA-NON VALENTEM:
Plaintiffs allege the trial court erred by failing to apply the doctrine of contra non valentem to the prescriptive period on the tort action. We disagree.
"Contra non valentem is the shortened form of the phrase contra non valentem agere nulla currit praesriptio, meaning prescription does not run against a party unable to act. Although La.Civ.Code Art. 3521, now Art. 3467, provided that prescription runs against all persons unless they are excepted by law, Louisiana jurisprudence recognized this limited exception based on an ancient civilian doctrine." Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986) at p. 721, citing Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979).
The contra non valentem doctrine recognizes four situations where prescription will not commence, to wit:
1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
4) Where the cause of action is not known or reasonably knowable by plaintiff even though his ignorance is not induced by defendant.
Plaquemines Parish Commission Council v. Delta Development, Inc., 502 So.2d 1034 (La. 1987); Corsey v. State Dept. of Corrections, supra.
The doctrine is of no avail to a plaintiff whose delay in filing suit results from his own wilfulness or neglect. Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (La.1970); Rozas v. Department of Health and Human Resources, State of Louisiana, 522 So.2d 1195 (La.App. 4th Cir. 1988), writ den. 523 So.2d 1338 (La.1988). Plaintiff bears the burden of establishing facts to support a contra non valentem plea.
After a review of the record, and in particular the pleadings in this case, there is no showing nor allegations to suggest that plaintiffs were prevented from acting when they became aware of the alleged tortious conduct of Orillion.
The Adams knew when the alleged "sinister" deals were made by Orillion. They also knew within days of their rejection of the "deals" that Orillion refused to negotiate further. By their own admission, they received no further contact from the bank. They have alleged no facts or exceptional circumstances which prevented them from filing suit. Just as they filed for bankruptcy to stop the sale of the home, they could have also filed an action in state court for injunction or damages at any time after the alleged "deals" were made. Their failure to do so within the one year prescriptive period resulted from their own negligence. Any "hope" they may have held that the bank would still negotiate is insufficient to invoke the doctrine of contra non valentem as it has no basis in fact. Contra non valentem does not apply.
Because we have concluded that the trial court did not err in maintaining the prescriptive pleas of both defendants, it is unnecessary to address the issues raised by Orillion's answer to the appeal.
AFFIRMED.
BARRY, Judge, dissents with reasons.
Considering the pleadings and memoranda on which the trial court's ruling was based, the record shows that the exception of prescription should have been overruled.
*225 The burden of proof is normally on the party pleading prescription. If on the face of the petition it appears that prescription has run, the burden shifts to the plaintiff to prove the suspension or interruption of the prescriptive period. Younger v. Marshall Industries, Inc., 618 So.2d 866 (La.1993). On the face of the petition Mr. and Mrs. Adams' suit was filed within one year of the Sheriff's Sale, June 3, 1992. In their opposition to FNBC's exceptions, Mr. and Mrs. Adams claim FNBC empowered its agent, Orillion, to negotiate to stop the foreclosure proceedings and recoup the mortgage debt. That allegation is not controverted. Damages could not occur until there was a loss (foreclosure). Also, Orillion far exceeded his authority and did not negotiate in good faith.
Prescription does not commence to run until the plaintiff has actual constructive knowledge of the tortious act, the damage caused, and the causal relationship between the tortious act and the damage. Beth Israel v. Bartley, Inc., 579 So.2d 1066 (La.App. 4th Cir.1991), writ den., 587 So.2d 696 (La.1991). Mere apprehension that something might be wrong is not sufficient. The focus is on the reasonableness of the tort victim's action or inaction. Griffin v. Kinberger, 507 So.2d 821 (La.1987). "Prescription will not begin to run at the earliest possible indication that plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage." Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La.1987).
The actions of FNBC, through its agent, were deceitful at best. Prescription should commence from the time of the actual loss, i.e., when the property went to auction. Otherwise it would have been premature to file suit.
Plaintiffs deserve their day in court.
NOTES
[1] Since this matter is before us on exceptions, the facts recited herein are based on the allegations contained in the pleadings and memoranda.
[2] A claim pursuant to the Unfair Trade and Consumer Protection Act also prescribes in one year. La.R.S. 51:1409(E).