SANDRA CABRINA JENKINS, Judge.
hBoth parties appeal the trial court’s August 22, 2014 judgment awarding plaintiff the amount of defendant’s deposit plus attorney’s fees as stipulated damages rather than actual damages resulting from defendant’s breach of an agreement to purchase plaintiffs property. For the following reasons, the judgment is affirmed.
FACTS AND PROCEDURAL HISTORY
Plaintiff, 1100 South Jefferson Davis Parkway, LLC (“South”), and defendant, Richard H. Williams, entered into an Agreement to Purchase (“the Agreement”) on November 17, 2008. Under the Agreement, South agreed to sell immovable property in New Orleans, Louisiana to Williams for the sum of $875,000.00. The Agreement contained an inspection period of 30 calendar days, which began the first day after the Agreement was accepted. Specifically, the inspection period provided that:
[Williams] may, at his expense, have any inspections made by experts or others of his choosing ... Upon completion of Inspections, [Williams] must provide [South] with a copy of all inspection reports, and recognizes that such reports may be provided to others by. [South], If [Williams] is not satisfied with the present condition of the property as reflected in the Inspection reports, [Williams] (1) may elect, in writing, to terminate the agreement to purchase ....
| ¡.In addition, the parties inserted a due diligence handwritten provision which provided “purchaser to have 30 days from acceptance of this offer to conduct due diligence.” Thus, both the inspection and due diligence period were to expire on December 18, 2008.
On December 16, 2008, Williams’ agent requested that the “due diligence (inspections)” period be extended an additional 30 days in order to obtain a flood elevation *1215 certificate.[1] The parties then signed an Extension on Agreement to Purchase which stated “the inspection period ... [would] be extended from December 18, 2008 to January 19, 2009” and “all other terms and conditions of the purchase agreement are to remain in full force and effect.”
By letter and e-mail dated January 14, 2009, Williams’ agent sent South’s agent notice that Williams was terminating the Agreement because of issues with the property’s flood elevation. Thereafter, the parties mutually agreed to a cancellation agreement, which reserved all claims that either party wished to pursue, and Williams was returned his $10,000.00 deposit.
On December 28, 2010, the property was sold to a third party for $616,000.00. On February 21, 2013, South filed suit against Williams for breach of contract requesting “damages in the amount of the difference between the contract price and the actual sale price plus the amount of costs and/or fees, including expenses and reasonable attorney’s fees, incurred as a result of the Purchase Agreement or defendant’s breach thereof.”
| sAfter a bench trial held on August 18, 2014, the trial court rendered judgment on August 22, 2014, in favor of South finding that Williams breached the Agreement. The trial court found that no evidence of bad faith or fraud existed and enforced the Agreement’s stipulated damages provision thereby limiting South’s damages to $10,000.00, the amount of Williams’ deposit, and awarding an additional $10,000.00 in attorney’s fees, plus costs. Both parties timely appealed.
STANDARD OF REVIEW
It is well-established that an appellate court may not set aside a trial court’s findings of fact in the absence of manifest error or unless it is clearly wrong. Howard v. Louisiana Citizens Prop. Ins. Corp., 10-1302, p. 3 (La.App. 4 Cir. 4/27/11), 65 So.3d 697, 699 (quoting Keller v. Monteleon Hotel, 09-1327, p. 2 (La.App. 4 Cir. 6/23/10), 43 So.3d 1041, 1042). Where there is conflict in the testimony, reasonable inferences of fact should not be disturbed on review even if the appellate court would have weighed the evidence differently. Reddoch v. Parish of Plaquemines, 13-0788, p. 3 (La.App. 4 Cir. 3/26/14), 134 So.3d 683, 685 (quoting Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)). However, if the trial court makes a legal error that interdicts the fact-finding process, the appellate court must conduct a de novo review of the record. Dejoie v. Gui-dry, 10-1542, p. 14 (La.App. 4 Cir. 7/13/11), 71 So.3d 1111, 1120 (quoting Evans v. Lungrin, 97-0541, p. 6 (La.2/6/98), 708 So.2d 731, 735). A legal error occurs when a trial court prejudicially applies incorrect principles of law such that it materially affects the outcome of the case and deprives a party of substantial rights. Id. (quoting Evans, 97-0541, p. 6, 708 So.2d at 735).
A contract is the law between the parties, and courts are obliged to give *1216 them legal effect according to the common intent of the parties. La. C.C. arts. 1983 and |42045; 6126, L.L.C. v. Strauss, 13-0853, p. 12 (La.App. 4 Cir. 12/4/13), 131 So.3d 92, 100-101. The parties’ intent will be determined by the words of the contract if they are clear, explicit, and lead to no absurd consequences. La. C.C. art. 2046; New Orleans Jazz & Heritage Found., Inc. v. Kirksey, 09-1433, p. 9 (La.App. 4 Cir. 5/26/10), 40 So.3d 394, 401. However, if the meaning óf a contractual provision is ambiguous, it must be interpreted in light of considerations such as “the nature of the contract, equity, usage, and the conduct of the parties before and after the formation of the contract.” La. C.C. art. 2053; see New Orleans Jazz & Heritage Found., Inc., 09-1433, p. 9, 40 So.3d at 401. Our review of questions of law, such as whether a contract is ambiguous, is simply whether the trial court was legally correct or incorrect. R.J. Messenger, Inc. v. Rosenblum, 03-2209, p. 8 (La.App. 4 Cir. 5/11/05), 904 So.2d 760, 765 (citations omitted).
In the instant case, the trial court made numerous detailed factual findings based upon its consideration of the testimony presented and the documentary evidence submitted, including the Agreement. South seeks a de novo review, arguing that the trial court committed three legal errors. After a review of the record, we do not find that the trial court made any legal error so substantial that it tainted the fact-finding process and rendered the matter subject to de novo review. Therefore, the trial court’s interpretations of the contractual language will be reviewed under the legal correctness standard and the trial court’s findings of fact will be reviewed for manifest error.
LAW AND ANALYSIS
South asserts the trial court erred in (1) finding that Williams’ breach did not amount to fraud or bad faith; (2) enforcing the stipulated damages provision; and (3) its award of attorney’s fees. South also requests an additional award of | Battorney’s fees and costs in relation to this appeal. Williams filed a cross-appeal arguing that the trial court erred in finding a breach of the Agreement. Williams’ assignment will be addressed first.

Breach of Contract

In his sole assignment, Williams asserts that the trial court’s finding that he breached the Agreement was error. The essential elements of a breach of contract claim are the existence of a contract, the party’s breach thereof, and resulting damages. Favrot v. Favrot, 10-0986, pp. 14-15 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1108-09 (citations omitted). The party claiming the rights under the contract bears the burden of proof. Id., 10-0986, p. 15, 68 So.3d at 1109.
A purchase agreement that sets forth the thing and the price, such as the Agreement here, is a species of contract. See La. C.C. art. 2623. The Agreement contained conditional clauses, such, as the inspection and due diligence period, which were to expire on December 18, 2008. The inspection period was thereafter extended until January 19, 2009, and all other provisions, including the due diligence period, remained unchanged. Soon after Williams obtained the flood elevation survey,[2] which allegedly revealed that the property would not fulfill the State contract, Williams’ agent provided written notice on January 14, 2009 of his intent to terminate the Agreement. Accordingly, the trial court *1217 concluded that Williams breached the Agreement. The record supports this finding.
According to the Agreement’s inspection provision, if Williams was not satisfied with the condition of the property “as reflected in the inspection reports,” he had the authority to terminate the Agreement, as long as said report was provided to South. The trial court found that the “report does not state that the | Relevation as reflected in the survey limits the purchaser’s use of the property.” Thus, because the flood elevation survey/report simply revealed the property’s elevation statistics, coupled with Williams failing to provide a copy of the document to South, it cannot be considered an inspection report as contemplated by the Agreement.[3] We find that the trial court’s factual determination that Williams breached the Agreement was not manifestly erroneous. This assignment of error is without merit.

Fraud or Bad Faith

By South’s first assignment of error, it contends that the trial court erred in finding that Williams’ breach of the Agreement did not amount to fraud or bad faith.
Williams was purchasing the property to satisfy a State contract bid requirement. To win the State contract, the successful bidder had to obtain a flood elevation certificate,[4] and the property had to meet a number of requirements. South claims that Williams’ failure to disclose his intent to terminate the Agreement if he did not win the State contract was a misrepresentation through silence intended to induce South into signing the Agreement. South claims that Williams’ misrepresentation also renders his actual termination a bad faith breach of contract.
|7The measure of damages in a breach of contract action depends on whether the breach was in good faith or bad faith. “An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.” La. C.C. art. 1997. Thus, if Williams acted in bad faith, he is liable for all of South’s damages that resulted from his breach. “[A]n obligor is in bad faith if he intentionally and maliciously fails to perform his obligation.” Olympia Minerals, LLC v. HS Res., Inc., 13-2637, p. 32 (La.10/15/14), - So.3d -, -, 2014 WL 5394124 (quoting La. C.C. art. 1997, cmt. (b)). The term bad faith “generally implies actual or constructive fraud or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties.” Delaney v. Whitney Nat’l Bank, 96-2144, p. 18 (La.App. 4 Cir. 11/12/97), 703 So.2d 709, 718 (citing Adams v. First Nat’l Bank of Commerce, 93-2346, p. 4 (La.App. 4 Cir. 9/29/94), 644 So.2d 219, 222). This Court has also characterized the term bad faith as “fraud, deception, or sinisterly-motivated nonfulfillment of an obligation.” Favrot, 10-0986, p. 17, 68 So.3d at 1110 (quoting Adams, 94-0486, p. 2, 644 So.2d at 222).
*1218 La. C.C. art. 1953 defines fraud[5] as “a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.” However, in order to find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information. Becnel v. Grodner, 07-1041, p. 4 (La.App. 4 Cir. 4/2/08), 982 So.2d 891, 894 (citing Greene v. Gulf Coast Bank, 593 So.2d 630, 632 (La.1992)). Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. J¿La. C.C. art. 1957. Nonetheless, “[f]raud cannot be predicated upon mistake or negligence, no matter how gross.” Terrebonne Concrete, LLC v. CEC Enterprises, LLC, 11-0072, p. 10 (La.App. 1 Cir. 8/17/11), 76 So.3d 502, 509 (citing Whitehead v. Am. Coachworks, Inc., 02-0027, p. 6 (LaApp. 1 Cir. 12/20/02), 837 So.2d 678, 682).
The trial court specifically found that Williams did not act in bad faith when he terminated the Agreement and his failure to disclose his purpose did not constitute fraud.[6] Our review of the record does not show that this finding was manifestly erroneous.
Williams contends that he was under no duty to disclose the reason for which he intended to purchase the property at issue and that he notified South of his intent to terminate the Agreement shortly after he realized the property would not satisfy the State’s contract flood elevation requirement. Therefore, according to Williams, he did not act in bad faith nor did he exhibit the requisite intent for fraud. We agree.
Williams’ failure to disclose the use or purpose of the property to South simply does not amount to fraud or bad faith. South has failed to prove that at the time that Williams entered into the Agreement, he intended to not perform. Thus, based on our review of the record, we cannot say that the trial court’s findings were manifestly erroneous. This assignment of error is without merit.
| Stipulated Damages
In South’s second assignment of error, it asserts that the trial judge erred in enforcing the Agreement’s stipulated damages clause.[7] The law is established that parties to a contract may stipu *1219 late damages to be recovered in case of a breach of contract. See La. C.C. art. 2005.[8] A stipulated damages clause fixes the amount of damages that may be recovered to ease the burden of proving loss with certainty. Henderson v. Ayo, 11-1605, pp. 7-8 (La.App. 4 Cir. 6/13/12), 96 So.3d 641, 646 (citations omitted).
South contends the trial court committed legal error in concluding that a finding of intent was necessary to invalidate a stipulated damages clause. We disagree and find that South was bound by the stipulated damages clause as long as it was not “so manifestly unreasonable as to be contrary to public policy.”[9] See La. C.C. art. 2012; see also Lombardo v. Deshotel, 94-1172 (La.11/30/94), 647 So.2d 1086; Heirs of Gremillion v. Rapides Parish Police Jury, 493 So.2d 584 (La.1986); Hussain v. Khan, 14-65 (La.App. 5 Cir. 5/21/14), 142 So.3d 281; White v. Strange, 11-523 (La.App. 3 Cir. 12/21/11), 80 So.3d 1189; Serv. Investors Ltd. v. Scully, 08-1062 (La.App. 3 Cir. 3/4/09), 9 So.3d 910; Grimsley v. Lenox, 93-1618 (La.App. 3 Cir. 9/14/94), 643 So.2d 203; Rabin v. Biazas, 537 So.2d 221, 223 (La.App. 4th Cir.1988).
In its reasons for judgment, the trial judge acknowledged that under the stipulated damages clause, “South had the option of seeking specific performance or re-offering the property for sale and retaining the deposit. [South] also has the right to recover reasonable attorney’s fees and costs.” Because the property was already sold at the time South filed its Petition for Damages, specific performance was impractical and South’s only recourse was that it was entitled to Williams’ forfeited *1220 deposit. See Lombardo, 94-1172, p. 2, 647 So.2d at 1088 (citing La. C.C. art. 1986).
We note that South limited its own damages by failing to seek specific performance under the stipulated damages clause. The record shows that South did not sell the property for almost two years after Williams terminated the Agreement. Stated otherwise, South had two years to seek specific performance against Williams, which it failed to do. Thus, South cannot now be heard to complain h-ibecause its restricted damages is a direct result of its own inaction. South has failed to point to any public policy that this clause violates. Therefore, the stipulated damages clause was correctly enforced and there is no merit to this assignment.

Attorney’s Fees

By South’s final assignment, it maintains that the trial court committed legal error in its award of $10,000.00 in attorney’s fees because no hearing was held and ho evidence was submitted.[10] South also requests an additional award of attorney’s fees and costs relative to this appeal.
The award of attorney’s fees is left to the sound discretion of the trial court, which will not be reversed on appeal unless that discretion was clearly abused. Dixie Serus., L.L.C. v. R & B Falcon Drilling USA, Inc., 05-1212, p. 9 (La.App. 4 Cir. 3/21/07), 955 So.2d 214, 220 (citing Miller v. Ecung, 96-267, p. 3 (La.App. 3 Cir. 6/5/96), 676 So.2d 656, 658). A reasonable attorney’s fee is decided on a case-by-case basis and a “court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered.” Lifetime Const., L.L.C. v. Lake Marina Tower Condo. Ass’n, Inc., 12-0487, p. 10 (La.App. 4 Cir. 3/27/13), 117 So.3d 109, 116 (citations omitted).
Despite its assertion that it is entitled to actual damages, South has failed to put forth any evidence to show that the award of attorney’s fees was error. Based on our review of the record and the trial court’s observation of the evidence and the |iacase, we find no abuse of discretion in the trial court’s award of $10,000.00 in attorney’s fees.
Finally, we consider South’s request for appeal damages and additional attorney’s fees and costs. While South is correct that an additional award is allowed pursuant to La. C.C.P. art. 2164,[11] such an award is limited to situations where the appeal is taken to delay the action, the appellant does not seriously believe the law and argument that is being advanced, or the appeal does not present a substantial legal question. Vincent v. Vincent, 11-1822, p. 11 (La.App. 4 Cir. 5/30/12), 95 So.3d 1152, 1160 (quoting Johnson v. Johnson, 08-0060, p. 5 (La.App. 4 Cir. *1221 5/28/08), 986 So.2d 797, 801). Moreover, because appeals are always favored, additional damages will not be granted unless the appeal is unquestionably frivolous. Dugas v. Thompson, 11-0178, p. 15 (La.App. 4 Cir. 6/29/11), 71 So.3d 1059, 1068 (citing Haney v. Davis, 04-1716, p. 11 (La.App. 4 Cir. 1/19/06), 925 So.2d 591, 598).
While Williams’ cross-appeal lacks merit, we find that he did believe in the position he asserted and it was not taken on an immaterial issue. Moreover, as this was a devolutive appeal rather than a suspensive appeal, it cannot be said that Williams’ appeal was taken solely for delay. Accordingly, we deny South’s request for additional costs and attorney’s fees for this appeal.[12]
|1SDECREE
For the foregoing reasons, the judgment of the trial court is affirmed
AFFIRMED

. The letter from Williams’ agent requesting the extension stated “[m]y client has a tenant for the building that has some requirements that need to be satisfied before he can close on the property. A flood elevation certificate is required which must meet the tenant’s specifications within FEMA guidelines. As I mentioned to you, this is a state contract and my client has been qualified as the low bidder. They have not been able to move forward with the process until this qualification letter hád been received which happened today.”

. The “Elevation Certificate” is dated January 9, 2009.

. The Agreement’s due diligence provision presumably encompasses the flood elevation survey/report. However, as the trial court acknowledged, this determination is irrelevant as the due diligence clause was not included in the 30-day extension and expired on December 19, 2008, well before Williams provided notice of his termination.

. Specifically, pursuant to the State contract, Williams was required to provide "certification that the offered site and building meet the Orleans regulations addressing flood pla[i]n elevations.” Williams testified that he was unaware of the specific flood elevation requirement for the State contract when he entered into the Agreement.

. While consent to sell induced by fraud will destroy the validity of the contract, South did not seek rescission of the Agreement for fraud. See Kaufman v. Audubon Ford/Audubon Imports, Inc., 04-1540, p. 7 (La.App. 4 Cir. 4/27/05), 903 So.2d 486, 490.

. In support of this finding, the trial court stated in its reasons for judgment that "South had the option when it was approached about the extension, which detailed the purpose of the purchase, to refuse to extend the agreement. Instead, it opted to allow the extension. ... This court believes Mr. Williams was having difficulty obtaining the base flood elevation which was a central factor in his decision to cancel the agreement.”

..The Agreement’s stipulated damages clause provided:
■ In the event [Williams] fails to comply with this agreement within the time specified, [South] shall have the right to demand specific performance or, at [South's] option, [South] shall have the right to re-offer the property for sale and may declare the deposit, ipso facto, forfeited, without formality beyond tender of title to [Williams], In either event, [South] shall have the right to recover any costs and/or fees, including expenses and reasonable attorney's fees, incurred as a result of this agreement or breach thereof.

. The essential components of a stipulated damages clause are: (1) it was stipulated in advance by the parties; (2) it provides the amount to be recovered in case of nonperformance; and (3) it gives rise to a secondary obligation for the purpose of enforcing the principal one. La. C.C. art. 2005.

. South argues that pursuant to La. C.C. art. 2004, "[a]ny clause is null that, in advance, excludes or limits the liability of one parly for intentional or gross fault that causes damage to the other party.” (Emphasis added.) Thus, South suggests that the stipulated damages clause can be nullified for gross fault, which includes "not only gross negligence, but also bad faith breach of contract or fraud.” Wadick v. Gen. Heating & Air Conditioning, LLC, 14-0187, p. 21 (La.App. 4 Cir. 7/23/14), 145 So.3d 586, 599. In Wadick, the defendants argued that an exclusionary provision in an installment contract, which relieved the defendants from liability "however caused,” including intentional or gross fault and excluded liability for any physical injury, barred plaintiffs’ claims for mold damages. On appeal, after finding that La. C.C. art. 2004 is applicable to both tort and contract actions, this Court found the provision invalid to exclude liability for "claims for physical injury or claims for property damages as a result of the bad faith breach of contract or fraud.” In the instant case, the stipulated damages clause is simply a stipulation by the parties providing the amount to be recovered in the event the contract is breached. The clause is not a waiver provision, nor does it attempt to exclude or limit the liability of one party for intentional or gross fault. Thus, even if a finding of gross fault was sufficient, the provision in the case sub judice does not rise to the level to violate La. C.C. art. 2004. In addition, La. C.C. art. 2004 is included in Book III, Title IV, Section 4 titled "Damages,” whereas La. C.C. art. 2012 is included in Book III, Title IV, Section 5 titled “Stipulated Damages." Pursuant to the general rules of statutory construction, where two or more statutes deal with the same subject matter, the statute more specifically directed to the matter at issue must prevail over a statute more general in character if they cannot be reconciled. Pumphrey v. City of New Orleans, 05-0979, pp. 11-12 (La.4/4/06), 925 So.2d 1202, 1210 (citations omitted). Therefore, Article 2012 must be applied over Article 2004, which further undermines South’s argument.

. Instead, South suggests its attorney’s fees should be $134,337.67. To get to this figure, South submits it is entitled to $335,844.18 in actual damages (the Agreement price- $875,-000.00- plus judicial interest to the date the property was sold- $76,844.18- less the third party's purchase price- $616,000.00) and requests that this Court award attorney’s fees of 40% of that amount.

. La. C.C.P. art. 2164 provides: "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.”

. South argues in its reply brief that appellate courts are not limited in awarding additional attorney’s fees to frivolous appeals. In support, South cites South Texas Pioneer Millwork v. Favalora Constructors, Inc., 11-0722, p. 9 (La.App. 5 Cir. 3/13/12), 90 So.3d 1092, 1098, wherein the Court granted appellee $3,000.00 for additional work performed as evidenced by the "certified time sheet of the amount of costs expended in connection with the appeal.” Here, South has not submitted any evidence to substantiate the amount of timé or money spent in relation to this appeal. Thus, South's reliance on South Texas Pioneer Millwork is misplaced.