## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-724

CLIFTON FRANKLIN

VERSUS

FOUNTAIN GROUP ADJUSTERS, L.L.C.

**********

APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, NO. 2016CV00229
HONORABLE GARY K. HAYS, CITY COURT JUDGE

**********

## VAN H. KYZAR
## JUDGE

**********

Court composed of Sylvia R. Cooks, John E. Conery, and Van H. Kyzar, Judges.

**WRIT GRANTED. JUDGMENT REVERSED IN PART, RENDERED IN
PART, AND REMANDED.**

David F. Rutledge
330 Settlers Trace, Suite A
Lafayette, LA 70508
(337) 484-1529
COUNSEL FOR PLAINTIFF/APPLICANT:
    Clifton Franklin

Stacy C. Auzenne
Auzenne Law Firm, L.L.C.
P. O. Box 11817
Alexandria, LA 71315-1817
(318) 880-0087
COUNSEL FOR DEFENDANT/RESPONDENT:
    Fountain Group Adjusters, LLC

**KYZAR, Judge.**

The Plaintiff/Relator, Clifton Franklin, seeks supervisory writs from the judgment of the Pineville City Court, Parish of Rapides, which denied his motion for summary judgment filed against the Defendant/Respondent, Fountain Group Adjusters, LLC. For the reasons set forth below, we grant the writ, reverse the judgment in part, render in part, and remand for further proceedings consistent herewith.

## FACTS AND PROCEDURAL HISTORY

Mr. Franklin entered into a contract with Fountain Group Adjusters, LLC, (Fountain) to provide insurance adjusting services associated with damages claims arising from Superstorm Sandy. The amount of compensation to be received for his work was set forth in the contract executed between Mr. Franklin and Fountain; Mr. Franklin being identified in the contract as the independent contractor, referred to as "IC," and Fountain being identified in the contract as "FG," in the following provision:

## COMPENSATION

. . . .

5.  IC shall be entitled to compensation for performing those tasks and duties related to the adjustment of insurance claims equal to <u>65%</u> of FG's compensation based on the current applicable Fee Schedule, copies of which will be provided by FG to IC from time to time.
    **Note: FG has the right to apply compliance penalties.** You will be notified of the penalty and the reason for such penalty.

6.  Such compensation shall be paid to IC on a weekly basis after FG has received compensation from the client for service fee.

Mr. Franklin avers that he was asked to sign a second contract, identical to the first, because Fountain could not locate its original copy of the contract. The

pertinent provisions are the same in both contracts, with the exception that the second contract calls for compensation for claims adjusting services at 75%, rather than 65%. Mr. Franklin, however, is only asserting a claim for 65% commission. The two contracts, attached to Mr. Franklin's motion for summary judgment, are dated August 28, 2012 and December 4, 2012.

During this time, Mr. Franklin was employed by Claims One.[1] Fountain also entered into a contract with Claims One. Below is a portion of that contract, with Claims One identified as an independent contractor, referred to as "IC," and Fountain being identified in the contract as "FG," also setting forth compensation for services, in the following provision:

**COMPENSATION**

. . . .

5.   IC shall be entitled to compensation for performing those tasks and duties related to the adjustment of insurance claims equal to 10% of FG's compensation based on the current applicable Fee Schedule, copies of which will be provided by FG to IC from time to time.
**Note: FG has the right to apply compliance penalties.** You will be notified of the penalty and the reason for such penalty.

6.   Such compensation shall be paid to IC on a weekly basis after FG has received compensation from the client for service fee.

It is undisputed that Mr. Franklin performed adjusting services pursuant to the contract from 2012 through some point in 2014. It is also undisputed that through third parties, Fountain received $327,644.00 for adjusting services performed by Mr. Franklin, through his employment with Claims One. Fountain paid Claims One seventy-five percent (75%) of that total, equaling $245,737.00, which is the total amount of adjuster commission earned by work performed by

---

[1]Claims One was also referred to as Claimsone and Claims 1 One and various other similar titles in the writ application and documents attached thereto.

Mr. Franklin through Claims One, representing the 65% owed to Mr. Franklin and the 10% due Claims One. It is further undisputed that Mr. Franklin did, in fact, receive a significant amount of the money he was owed through his contract with Fountain directly from Claims One, which was paid by Fountain to Claims One on Mr. Franklin's behalf.

Then, on May 2, 2016, Mr. Franklin filed suit against Fountain, claiming that, although he had received much of what he had earned under the contract, he had not been fully compensated. Subsequently, Mr. Franklin filed a motion for summary judgment, arguing that the contract clearly provided that Fountain was to pay him a certain amount, and pursuant to his affidavit, he was not paid the full amount. He asked that the trial court enter judgment in his favor against Fountain, as follows: "summary judgment should be granted against Fountain Group Adjusters, LLC for breach of contract and damages in the amount of $28,395.74 plus legal interests [sic] from date of original demand and court costs." Alternatively, Mr. Franklin requested that summary judgment be granted against Fountain as to the issue of liability concerning the breach of contract claim.

Fountain filed an opposition to the motion for summary judgment contending that it was not liable to Mr. Franklin. Fountain stated that it had entered into a separate contract with Mr. Franklin's employer, Claims One, whereby Claims One would receive 10% of the amount of payment Fountain received for the adjusted claims, similar to the 65% provided for in Mr. Franklin's contract. Fountain asserted that it paid Mr. Franklin's employer, Claims One, the full amount due to Mr. Franklin, minus a 10% "hold back" until all audits were completed; all of which, Fountain claimed, was standard practice in the industry. Fountain expounded on the purported industry standard, claiming that the contractor, Fountain herein, would pay the employer, i.e., Claims One, and the

3

adjuster, i.e., Mr. Franklin, the amount due to both of them and that Claims One would then pay the employee, Mr. Franklin, the portion of that total amount that is his due.

In this case, however, Claims One did not pay Mr. Franklin the full amount due him, even though Fountain had allegedly sent the earned commissions to Claims One for it to pay Mr. Franklin. Based upon this fact, Fountain asserted that the true party liable to Mr. Franklin was Claims One, not Fountain.[2] In addition to attaching an affidavit of Keith Fountain, the sole owner of Fountain, Fountain attached documentation to its opposition, including various business records and emails.

Mr. Franklin filed a reply brief in response to the opposition and moved for the trial court to strike the documentation attached to Fountain's motion as hearsay. At the hearing on the motion for summary judgment, however, it was made clear to the court that the objectionable materials sought to be excluded were certain emails and direct mail from Claims One to Fountain, as shown by the following excerpt of argument by counsel for Mr. Franklin:

> I feel that's not an argument I have to make uh, but it is clearly hearsay and we exclude - - we would request that it be excluded as it is hearsay, it's not authenticated either, Your Honor. There's no authentication from this other gentlemen [sic] that allows it to come in. He is not a party by the way the defendant just - - just said uh, my counterpart just said that there has not been an answer, to acknowledge, filed in the court.
>
> . . . .
>
> But there is a letter sent to the defendant, that the defendant submitted to the court, uh but you - - in any regard, it doesn't matter, the declarant is not here testifying to the truth of the matter asserted, therefore, it's hearsay.

---

[2] In the opposition memorandum filed in the city court, Fountain stated that Claims One had been added as a third party to the litigation; however, no pleading attached to the instant writ application shows this information to be true.

4

After the hearing on the motion for summary judgment, counsel for Mr. Franklin requested a specific ruling as to the hearsay issue, and the trial court answered as follows:

> [A]s to the hearsay, um, the Court has taken that and looked at it [], with the hearsay issue, I do believe for the purposes of this hearing that we're having this morning, [] but the Court really didn't look at that to make its decision so the Court is going to actually make a ruling on the hearsay issue, I do believe that it is hearsay.

Though it ruled to disregard the hearsay items in Fountain's submission, the trial court denied Mr. Franklin's motion for summary judgment, finding genuine issues of material fact that must first be resolved. Mr. Franklin thereafter filed the instant writ application, asserting one assignment of error: "The trial court erred in denying the applicant's Motion for Summary Judgment; there was no evidence to the contrary and therefore, no genuine issues of material fact."

## OPINION

We review a trial court's granting or denial of a motion for summary judgment *de novo* according to well established appellate principles.

> Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Bonin v. Westport Ins. Corp.*, 05-0886, p. 4 (La. 5/17/06), 930 So.2d 906, 910; *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Duncan v. USAA Ins. Co.*, 06-0363, p. 4 (La. 11/29/06), 950 So.2d 544, 546-547. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett*, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765 (*per curiam*)(citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines*, 876 So.2d at 765-66.

5

*Smitko v. Gulf South Shrimp, Inc.*, 11-2566, pp. 7-8 (La. 7/2/12), 94 So.3d 750, 755.

Louisiana Code of Civil Procedure Article 966 provides that summary judgment procedure is favored and that it "is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La.Code Civ.P. art. 966(A)(2). It further provides that summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). Although the burden of proof rests with the mover, if the mover will not bear the burden of proof at trial then he need only point out to the trial court "the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La.Code Civ.P. art. 966(D)(1). Once this occurs, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

The resolution of Mr. Franklin's motion for summary judgment herein rests with the interpretation of the contract entered into between the parties. Mr. Franklin claims the contract is clear and free from ambiguity and that the terms of the contract clearly entitle him to recover the sums allegedly due, directly from Fountain. Thus, he claims that Fountain breached the contract, and he is entitled to summary judgment for the unpaid amounts, asserted to be $28,395.74, plus legal interest and court costs. On the other hand, Fountain asserts that the contract and payment procedure is a standard in the industry, such that the parties understood that payments due to Mr. Franklin for work performed were to be routed through his employer, Claims One, which would deduct the 10% due it, then remit to Mr.

6

Franklin his 65% commission. Accordingly, Fountain asserts that it did not breach its contract with Mr. Franklin, as it paid the full 75% to Claims One.

> The essential elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages. *Favrot v. Favrot*, 10-0986, pp. 14 15 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1108-09 (citations omitted). The party claiming the rights under the contract bears the burden of proof. *Id.*, 10-0986, p. 15, 68 So.3d at 1109.

*1100 South Jefferson Davis Parkway, LLC v. Williams*, 14-1326, p. 5 (La.App. 4 Cir. 5/20/15), 165 So.3d 1211, 1216, *writ denied*, 15-1449 (La. 10/9/15), 178 So.3d 1005.

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. A contract is interpreted by a determination of the common intent of the parties, giving the contractual words their generally prevailing meaning. La.Civ.Code art. 2045; La.Civ.Code art. 2047; *Amend v. McCabe*, 95-316 (La. 12/1/95), 664 So.2d 1183.

At the hearing on his motion for summary judgment, Mr. Franklin was required to present evidence to support his claim before the burden could shift to Fountain. *1100 South Jefferson Davis Parkway, LLC*, 165 So.3d 1211. To do so, Mr. Franklin attached various documents to his motion and noted that he submitted Requests for Admissions to Fountain during discovery. Mr. Franklin asserted that Fountain never responded to the admissions requests. The documentation attached to Mr. Franklin's motion included these unanswered Requests for Admissions, in addition to the contracts with Fountain that Mr. Franklin signed. Fountain filed no objection. Therefore, Mr. Franklin contends that the requests for admissions should be deemed as true, citing La.Code Civ.P. art. 1467(A) (emphasis added), which reads:

> Each matter of which an admission is requested shall be separately set forth. **The matter is admitted unless, within thirty**

7

days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney. The written answer or reasons for objection to each request for admission shall immediately follow a restatement of the request for admission to which the answer or objection is responding. If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; he may, subject to the provisions of Article 1472, deny the matter or set forth reasons why he cannot admit or deny it.

In *St. Julien v. Landry*, 12-100 (La.App. 3 Cir. 6/20/12), 94 So.3d 976, the defendant moved for summary judgment, averring that the plaintiff could not prove that the defendant was the owner of a dog which had caused the plaintiff's damages. In finding that summary judgment was improperly granted, this court observed the following:

> We review the grants of a summary judgment de novo. In reviewing the case before us, we first note that the record does not contain any response filed by Defendant to Plaintiff's Requests for Admissions of Fact. Under the provisions of La.Code Civ.P. art. 1467(A), a fact is deemed admitted if the responding party fails to timely "serve[ ] upon the party requesting the admission" his written answer or objection. A responding party ordinarily has fifteen days to file his response or objection, however, La.Code. Civ.P. art. 1467(A) also provides that "a defendant shall not be required to serve answers or objections before the expiration of thirty days after service of the petition upon him." Plaintiff filed suit on November 29, 2010, and attached to her Petition to be served upon Defendant a Request for Admissions of Facts and Interrogatories. Defendant did not file an Answer until April 6, 2011. From the record before us, we are able to determine that Defendant failed to timely answer or object to Plaintiff's Requests for Admissions of Fact and they are therefore deemed to be admitted. The trial judge should have considered these

8

admissions of fact, as directed in La.Code. Civ.P. art. 966, when deciding whether to grant or deny Defendant's motion for summary judgment. The facts deemed to be admitted by Defendant are contrary to Defendant's representations in her affidavit.

. . . .

Thus, faced with the facts deemed to be admitted by Defendant and the contradictory facts asserted in her affidavit, the trial judge, in order to reach his decision, would have had to engage in weighing the facts. Such is not appropriate on summary judgment, as this by its very nature indicates there are genuine issues of material facts in dispute. Moreover, at this stage of the proceedings, Plaintiff, relying on the facts deemed to be admitted by Defendant, shifted the burden of proof on the Motion for Summary Judgment to Defendant.

*Id.* at 979 (alteration in original).

Similarly, in the instant case, the record indicates that no responses were filed by Fountain to the Requests for Admissions, nor did Fountain seek to have the admissions set aside by the trial court. Therefore, the trial court should have considered the Requests for Admissions as admitted for purposes of the hearing on the motion for summary judgment in the instant case. La.Code Civ.P. art. 1476; La.Code Civ.P. art. 966. We do so here and include the admissions in our review of the evidence submitted to the trial court for purposes of summary judgment. The following Requests for Admissions, amongst others, were submitted by Mr. Franklin to Fountain:

### REQUEST FOR ADMISSIONS NO. 3:

Admit or deny that in 2012 Fountain Group hired Clifton Franklin as an Independent Contractor to provide insurance claim adjusting services for which Fountain Group agreed to compensate Clifton Franklin for performing said adjustment of insurance claims by paying him equal to 65% of Fountain Group's compensation based on the applicable Fee Schedule.

### REQUEST FOR ADMISSIONS NO. 5:

Admit or deny that Fountain Group never directly compensated Clifton Franklin in full in accordance with the 2012 contract/agreement to hire Clifton Franklin after Clifton Franklin did

9

perform his job by adjusting those claim assignments assigned to him on behalf of Fountain Group from 2012-2014.

**REQUEST FOR ADMISSIONS NO. 6:**

Admit or deny that Fountain Group received compensation related to the adjustment of insurance claims Clifton Franklin adjusted from 2012-2014 after he was hired by Fountain Group as an Independent Contractor in 2012 to provide insurance claim services on behalf of Fountain Group.

**REQUEST FOR ADMISSIONS NO. 7:**

Admit or deny that Clifton Franklin did perform his job by adjusting all claim assignments assigned to him from 2012-2014 on behalf of Fountain Group, after he was hired by Fountain Group as an Independent Contractor in 2012 to provide insurance claim adjusting services.

**REQUEST FOR ADMISSIONS NO. 11:**

Admit or deny that from 2012-2014, Clifton Franklin did perform his job of adjusting all claim assignments assigned to him on behalf of Fountain Group, after he was hired by Fountain Group as an Independent Contractor in 2012 to do so, to the satisfaction of Fountain Group in accordance with their agreement.

**REQUEST FOR ADMISSIONS NO. 12:**

Admit or deny that Clifton Franklin is still owed compensation for his services of adjusting claim assignments assigned to him on behalf of Fountain Group from 2012-2014, after he was hired by Fountain Group as an Independent Contractor in 2012 to provide insurance claim adjusting services.

Mr. Franklin also filed an affidavit in support of the motion for summary judgment. In addition to verifying the fact that he had entered into the agreement with Fountain, Mr. Franklin also averred:

In accordance with my normal course of business practice and accounting, I am owed from Fountain Group Adjusters, LLC, outstanding compensation for thirty-six (36) claims I successfully adjusted in the amount of $28,395.74 representing SIXTY-FIVE PERCENT (65%) of the agreed contact rate for those thirty-six (36) claims I successfully adjusted on behalf of Fountain Group Adjusters LLC.

In response, the sole owner of Fountain, Mr. Fountain, also submitted an affidavit, his in support of Fountain's opposition to Mr. Franklin's motion for summary judgment. Mr. Fountain's affidavit does not contradict the facts set forth in Mr. Franklin's affidavit nor the Requests for Admissions. The only exception being that Mr. Fountain states, "13. At all times pertinent herein, **CLIFF FRANKLIN** signed a **FOUNTAIN GROUP** agreement that he would be paid sixty-five (65%) percent of all adjusting commissions earned, which would be paid by **FOUNTAIN GROUP** to **CLAIMSONE**." However, a thorough reading of the referenced contract between Mr. Franklin and Fountain shows that it does not contain a provision directing that Fountain was going to pay Mr. Franklin's commission to Claims One. The two contracts between the parties, attached to Mr. Franklin's motion for summary judgment, are dated August 28, 2012 and December 4, 2012. Neither of these contracts provides that Fountain was to pay Mr. Franklin's commission to Claims One, rather than to Mr. Franklin himself.

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 10 (La.5/22/07), 956 So.2d 583, 590. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ.Code art. 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Sims*, 07-0054 at p. 7, 956 So.2d at 589; *McConnell v. City of New Orleans*, 35 La. Ann. 273 (1883). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. *See Maloney v. Oak Builders, Inc.*, 256 La. 85, 98, 235 So.2d 386, 390 (1970); *McConnell*, 35 La. Ann. at 275. Most importantly, a contract "must be interpreted in a common-sense fashion, according to

11

the words of the contract their common and usual significance." *Lambert v. Maryland Cas. Co.*, 418 So.2d 553, 559 (La.1982).

*Prejean v. Guillory*, 10-740, pp. 6-7 (La. 7/2/10), 38 So.3d 274, 279 (alteration in original).

Thus, even with full consideration of the affidavit of Mr. Fountain, this court concludes that the trial court erred in failing to grant summary judgment in favor of Mr. Franklin for the amounts owed under the contract. As stated above, Mr. Franklin objected to the documentation attached to the opposition brief filed in the trial court. Further, the trial court granted Mr. Franklin's motion that certain unspecified attachments be struck; although it is clear to this court that those attachments intended to be struck were the emails and text messages between Fountain, Claims One, and Claims One's owner, John Melvan. We note that Fountain has not filed its own writ application arguing that the trial court erred in making this interlocutory ruling.

Furthermore, we find that the contract between Mr. Franklin and Fountain provided that Fountain was to pay Mr. Franklin the commissions that he earned. Nowhere in the contract between Fountain and Mr. Franklin is there a provision that states Fountain is to pay Mr. Franklin's commissions to a third party, who is unnamed in the instrument and is not a party to the contract. The contract between Mr. Franklin and Fountain expressly provides that the terms of that agreement are not to be altered unless such alteration is set forth in writing between them. While there may be a separate contract between Fountain and the third party, Claims One, Mr. Franklin was not a party to that contract, just as Claims One was not a party to Mr. Franklin's contract with Fountain. Therefore, the provisions of the contract between Fountain and Claims One cannot be used by Fountain to alter the terms of its contract with Mr. Franklin. *See Prejean*, 38 So.3d 274. Further, as noted by Mr. Franklin, the fact that Fountain had already paid Claims One the amount due to Mr.

12

Franklin does not affect Fountain's liability to Mr. Franklin under the contract, nor does the custom in the industry override the express provisions of that contract. When the language of a contract or clause is unambiguous, "the letter of that clause should not be disregarded under the pretext of pursuing its spirit[.]" *Encana Oil & Gas (USA) Inc. v. Brammer Eng'g, Inc.*, 51,045, p. 6 (La.App. 2 Cir. 11/16/16), 209 So.3d 995, 1000, *writ denied*, 17-242 (La. 3/31/17), 217 So.3d 361. Accordingly, as to the question of liability, we find summary judgment in favor of Mr. Franklin to be appropriate.

Next, having found that per the express provisions of the contract Mr. Franklin is entitled to direct payment from Fountain of any sums owed but not yet received, we turn to the amount claimed. Mr. Franklin asserts that he is owed $28,395.74. However, we note that the proof of that amount is limited to the conclusory statement of Mr. Franklin, himself, in his own affidavit in support of his summary judgment motion. The facts, as presented, clearly indicate that of the money paid by Fountain to Claims One, Mr. Franklin did in fact receive from Claims One a significant amount of the total payment owed to him. Fountain's filings indicate a total of $245,737.00 was paid to Claims One, representing Claims One's 10% override and Mr. Franklin's 65% commission. Of the $245,737.00 paid by Fountain, it is not clear from the record what amount Mr. Franklin actually received from Claims One, and thus, how much money he is actually still owed. Mr. Franklin's motion for summary judgment contains the following conclusion:

> In accordance with the facts, law and evidence enumerated herein, summary judgment should be granted against Fountain Group Adjusters, LLC for breach of contract and damages in the amount of $28,395.74 plus legal interests [sic] from date of original demand and court costs. Alternatively, summary judgment should be granted against Fountain Group Adjusters, LLC as to the issue of liability concerning breach of contract.

13

There is no documentation in the record that demonstrates the accuracy of the sum claimed by Mr. Franklin. Accordingly, although we conclude that summary judgment should be granted in favor of Mr. Franklin on the issue of liability for any amounts unpaid pursuant to the subject contract, we find that there is a material issue of fact as to the actual amount due to Mr. Franklin from Fountain pursuant to his work performed under the terms of the contract. Further, Fountain admits that there is also a hold back applied to the commission payments until a final audit is done, and thus we find there is a material issue of fact in existence as to the effect thereof on the amount due Mr. Franklin.

## DISPOSITION

For the reasons assigned, we reverse the judgment of the trial court denying summary judgment in favor of the Plaintiff, Clifton Franklin, and render summary judgment in his favor on the issue of the liability of the Defendant, Fountain Group Adjusters, LLC, for payment of unpaid commissions due Plaintiff, and remand to the trial court for a determination of the amount owed pursuant thereto, and for the resolution of all issues remaining not presently before this court.

**WRIT GRANTED; JUDGMENT REVERSED IN PART; RENDERED IN PART; AND REMANDED.**

14